# IN THE SUPREME COURT OF IOWA

No. 15–1379

Filed February 3, 2017

Amended June 26, 2017

**DuTRAC COMMUNITY CREDIT UNION,**

Appellee,

vs.

**DOUGLAS P. HEFEL** and **SHEILA K. HEFEL,**

Appellants,

and

**WESTGATE COMMUNITIES, LLC,** An Iowa Limited Liability Corporation,

Intervenor-Appellant.

---

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

Appellants appeal the district court order granting a request for entry of a charging order. Appellee cross-appeals the district court order granting the motion to quash multiple levies and garnishments. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Steven P. Wandro, Kara M. Simons, and Brian Lalor of Wandro & Associates, P.C., Des Moines, for appellants Douglas and Sheila Hefel.

Brian J. Kane of Kane, Norby & Reddick, P.C., Dubuque, for intervenor-appellant Westgate Communities, LLC.

Peter D. Arling, McKenzie R. Hill, and Brent M. Tunis of O'Connor & Thomas, P.C., Dubuque, for appellee.

**ZAGER, Justice.**

The district court granted a request for entry of a charging order against a personal guarantor/judgment debtor's transferable interest in a limited liability company (LLC). The district court also granted the motion to quash filed by the judgment debtor and intervenor alleging multiple levies and garnishments were improper. On appeal, the appellants challenge the grant of the charging order and raise a number of defenses. The appellee challenges the district court grant of the motion to quash. For the reasons outlined below, we affirm the decision of the district court to the extent we find the entry of the charging order was proper. However, we also conclude that the district court erred in granting the motion to quash, as it was not improper to have multiple levies and garnishments at the same time so long as they are under a single execution. We therefore affirm in part and reverse in part the district court order, and remand to the district court.

## I. Background Facts and Proceedings.

Douglas and Sheila Hefel (Hefels) are the sole members of Star Properties, LLC, an Iowa limited liability company. In 2008, Star Properties bought land in Dubuque County and Jackson County. DuTrac Community Credit Union (DuTrac) provided the financing for both real estate purchases, and the Hefels personally guaranteed the loans on behalf of Star Properties.

On October 9, 2008, the Hefels executed a commercial loan agreement and a commercial promissory note with DuTrac. For both documents, the Hefels acted as officers and members of Star Properties. The Hefels obtained a loan of $2,370,000 from DuTrac for the purpose of purchasing and developing the two properties into residential subdivisions. One subdivision, Waterford Estates, was located in

Dubuque County. The other subdivision, Riviera Belle Estates, was located in Jackson County. As security, Star Properties granted DuTrac mortgages on both properties. The Hefels also executed an unlimited continuing guaranty in favor of DuTrac.

Star Properties thereafter defaulted on the commercial promissory note and commercial loan agreement. On July 2, 2010, DuTrac filed two foreclosure actions against Waterford Estates and Riviera Belle Estates.[1] The Hefels were named personally as parties in both foreclosure actions, in addition to Star Properties. On October 8, the Hefels filed a Voluntary Chapter 7 Bankruptcy Petition in the Northern District of Iowa Bankruptcy Court. The Hefels were subsequently dismissed without prejudice from both foreclosure actions.

On October 8, DuTrac obtained a judgment of foreclosure against Star Properties in the Jackson County action regarding Riviera Belle Estates. On October 15, DuTrac obtained a judgment of foreclosure against Star Properties in the Dubuque County action regarding Waterford Estates. The amount of judgment in each action was $2,202,800.14, interest of 8.5% per annum, and attorneys' fees. The judgments both provided that DuTrac had the right to a deficiency judgment against Star Properties if the proceeds of the foreclosure sale did not cover the balance owed. On May 5, 2011, Waterford Estates sold at a sheriff's sale for $891,000. On May 10, Riviera Belle Estates sold at a sheriff's sale for $662,000.

In the separate bankruptcy proceedings, DuTrac filed a proof of claim based on the foreclosures and guaranty. DuTrac was also allowed

---

[1]The foreclosure action against Waterford was filed in Dubuque County, and the foreclosure action against Riviera Belle was filed in Jackson County.

to utilize the deficiency amounts from the sheriff sales as unsecured claims in the Hefels' bankruptcy proceedings. On April 6, 2011, the Hefels were granted a discharge in their Chapter 7 bankruptcy.

On June 28, the Hefels' bankruptcy trustee filed a motion to compromise with the bankruptcy court. One of the issues during the course of the bankruptcy proceedings was Douglas Hefel's interest in Westgate Communities, LLC (Westgate). Douglas and his brother Terry Hefel are the sole members of Westgate, and each has a fifty percent ownership interest. In the motion to compromise, the trustee proposed that it would accept $125,000 from the Hefels in exchange for the release of any claims the trustee may have against Westgate. DuTrac objected to the motion and at one time proposed that the trustee sell it the bankruptcy trustee's estate interest in Westgate. DuTrac withdrew this proposal after it became aware of transfer restrictions in Westgate's operating agreement. DuTrac also proposed the judicial dissolution of Westgate and the sale of its assets. However, after a hearing on the competing proposals, the bankruptcy court approved the trustee's motion to compromise. The bankruptcy court concluded that the complexity, expense, and delay of litigation regarding the trustee's membership rights in and judicial dissolution of Westgate would appear substantial. It also concluded that the trustee's motion to compromise was reasonable and in the best interests of creditors and the estate. DuTrac appealed the decision and filed a motion for a stay while the appeal was pending. On October 20, the bankruptcy court denied the motion for a stay because it determined DuTrac was not likely to succeed on appeal. DuTrac then voluntarily dismissed its appeal. On December 27, DuTrac received $34,325.04 as a distribution on its claim against the Hefels' bankruptcy estate.

On February 17, 2012, DuTrac filed an adversary complaint in the bankruptcy proceedings to revoke the Hefels' discharge. In its detailed complaint, DuTrac alleged the Hefels committed fraud and concealment of property in their bankruptcy proceeding. The bankruptcy court held a trial on April 8, 2013, and issued its order revoking the Hefels' bankruptcy discharge on August 5.

The bankruptcy court found that the Hefels concealed a number of assets and contingent interests during the course of their bankruptcy proceedings. Specifically, the bankruptcy court noted that the Hefels failed to disclose in their multiple sworn bankruptcy schedules their interests in three individual trusts created October 27, 2000. While the Hefels did disclose the existence of these trusts at the Rule 2004 examinations, they testified the trusts held no assets. The Hefels also failed to disclose their contingent interests as beneficiaries in four separate trusts.[2] The bankruptcy court also found that the Hefels held an interest in eight separate life insurance policies, either as the insureds, owners, or beneficiaries. The total face value of these policies is $13.2 million. The Hefels did not disclose these interests in either their bankruptcy schedules or in their testimony prior to discharge. The Hefels did not disclose the sale of a power boat for $6660 four months after filing their bankruptcy petition.

In an amended bankruptcy schedule, the Hefels valued their interests in nine separate businesses at $10 each. At the revocation trial, testimony was given regarding the value of some of the business

---

[2]Douglas had a twenty-five percent interest in the Adelene and Bernard Hefel Trust valued at $1.6 million, the Bernard Hefel Trust valued at $2.9 million, and the Adelene Hefel Trust valued at $2.9 million. Sheila had a twenty-five percent interest in the Hoff Family Trust with an unknown value. She continued to receive payments from this trust after the bankruptcy filing.

entities. For example, the value of Dubuque Injection Service was determined to be between $5000 and $87,629. The value of Star Builders, Inc. was determined to be between $15,350 and $38,441. The value of Hefel Equipment was determined to be between $37,888 and $53,888. The Hefels also did not disclose their interest in Hawk Development, which was valued at $3510. After the trial, the bankruptcy court concluded the Hefels committed fraud under two sections of the Bankruptcy Code and revoked the Hefels' discharge in bankruptcy.

On August 23, DuTrac filed a petition against the Hefels in the Iowa District Court for Dubuque County seeking a deficiency judgment, foreclosure and bankruptcy expenses, and adversary claim expenses. DuTrac sought a deficiency judgment in the amount of $971,846.63 for principal and interest, attorneys' fees and expenses in the amount of $435,217.47 for the foreclosure and bankruptcy proceedings, and attorneys' fees and expenses in the amount of $65,321.06 for the adversary claim proceedings. DuTrac then filed a motion for summary judgment and an application for attorneys' fees related to the initial bankruptcy action, the foreclosure actions, the adversary claim proceedings, and the current proceeding. The Hefels filed a resistance to the motion, claiming the fees were unreasonable and excessive. The district court denied the motion for summary judgment and concluded that it was a question of fact whether all the claimed attorneys' fees and expenses were related to the present action.

DuTrac then filed a second application for attorneys' fees and costs with an itemization of services. The matter was set as a second motion for summary judgment, and the Hefels filed a resistance. On November 3, 2014, the district court granted the second motion for summary

judgment in part and awarded DuTrac $332,546.00 in attorneys' fees. DuTrac filed a rule 1.904 motion to enlarge, and the Hefels resisted the motion. On December 31, the district court denied DuTrac's motion to increase the amortized attorneys' fee rate from the original order. It also ordered that the Hefels are liable for the principal and accrued interest owed pursuant to the guarantee of mortgages in the amount of $726,448.61 plus interest accrued after June 14, 2014, at the rate of 8.5%. DuTrac filed a notice of appeal on January 21, 2015, and the Hefels filed a cross-appeal. We transferred the appeal to the court of appeals.[3]

DuTrac filed a request for execution under Iowa Code section 626.12 (2015) on January 28.[4] On January 29, DuTrac directed the sheriff to garnish and levy under the general execution. The sheriff was directed to garnish and levy nine items of described property.[5] On

---

[3]*DuTrac Cmty. Credit Union v. Hefel*, No. 15–0143, 2015 WL 7574230 (Iowa Ct. App. Nov. 25, 2015). The court of appeals opinion addressed the issue of merger doctrine, prejudgment interest on attorneys' fees, and the award of attorneys' fees for the years between 2010–2012. *Id.* at *12.

[4]Iowa Code section 626.12 provides,

> The execution must intelligibly refer to the judgment, stating the time when and place at which it was rendered, the names of the parties to the action as well as to the judgment, its amount, and the amount still to be collected thereon, if for money; if not, it must state what specific act is required to be performed. If it is against the property of the judgment debtor, it shall require the sheriff to satisfy the judgment and interest out of property of the debtor subject to execution.

Iowa Code § 626.12 (2015)

[5]The property was described as (1) garnishment on Douglas Hefel's wages at the Iowa Department of Transportation; (2) garnishment on Sheila Hefel's wages at Westgate Communities, LLC; (3) garnishment on Douglas Hefel's wages at Westgate Communities, LLC; (4) levy on six automobiles, plows, or trailers and miscellaneous equipment and furniture; (5) garnishment on the Hefels' rights or interests in tax incremental finance payments and any other payments from the City of Bellevue; (6) levy on the Hefels' shares and share certificates in Star Water Company; (7) levy on the Hefels' unused attorney trust fund accounts held by Wandro & Associates, P.C.; (8) levy on the Hefels' unused attorney trust fund accounts held by Mellon Spies &

February 13, the Hefels filed a motion to quash garnishments and levies, arguing that the statute only allows one execution, but they believed DuTrac brought multiple execution actions.

On February 4, DuTrac filed an application for a charging order. On February 13, Westgate filed a petition to intervene and a resistance to the charging order. On February 18, Star Water Company filed a petition to intervene and a resistance to the execution. On April 10, the district court granted Westgate's petition to intervene but denied Star Water's petition to intervene. The district court set a hearing for May 12 on the motion to quash garnishments and the resistance to the charging order.

On August 7, the district court issued its order. The district court granted the Hefels' motion to quash garnishments. The district court also granted DuTrac's request for entry of a charging order and ordered DuTrac to file a proposed charging order. DuTrac filed its proposed charging order and the Hefels resisted.

On August 14, the Hefels appealed the district court's order granting DuTrac's application for a charging order. On August 24, Westgate filed a resistance to the language of DuTrac's proposed charging order. On August 26, DuTrac cross-appealed the district court's order granting the Hefels' motion to quash garnishments and levies. On September 14, the district court filed the charging order. Westgate appealed the filing of the charging order and thereafter moved to consolidate the appeals. We granted the motion to consolidate on December 15.

_____

Pavelich; and (9) levy on the Hefels' unused attorney trust fund accounts held by Weinhardt & Logan.

## II.  Standard of Review.

An application for a charging order is a postjudgment equitable proceeding, and therefore our standard of review is de novo.  *See* Iowa R. App. P. 6.907.  To the extent we are asked to engage in statutory interpretation, our review is for correction of errors at law.  *See, e.g., State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016).

## III.  Analysis.

**A.  Standing.**  DuTrac argues Westgate lacks standing to challenge the charging order because Westgate suffered no cognizable injury. Westgate responds that the standing argument is without merit because the district court granted intervention to Westgate as an interested party. Alternately, Westgate argues it meets the standing requirements because its members, operations, and future revenue streams would be directly and negatively affected.  The question of standing is separate from the merits of the case, and we address it first.  *See, e.g., Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013).

To demonstrate standing, the party must be able to satisfy both prongs of our standing inquiry.  *Id.*  "Our cases have determined that a complaining party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected."  *Id.* (quoting *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004)).  To meet the first prong, "we require the litigant to allege some type of injury different from the population in general."  *Hawkeye Foodserv. Distribution, Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 606 (Iowa 2012) (quoting *Godfrey v. State*, 752 N.W.2d 413, 420 (Iowa 2008)). To meet the second prong, "the injury cannot be 'conjectural' or 'hypothetical,' but must be 'concrete' and 'actual or imminent.' "  *Id.* (quoting *Godfrey*, 752 N.W.2d at 423).

Westgate has a specific interest in the outcome of the litigation—namely, the amount of proceeds that would be disbursed to DuTrac under the terms of the charging order. *See, e.g.*, *Horsfield*, 834 N.W.2d at 452. The alleged injury is specific to Westgate, as it deals with Westgate's disbursements and is not one that is the same for the population in general. *See, e.g.*, *Hawkeye*, 812 N.W.2d at 606. Second, the potential injury is not conjectural or hypothetical because it deals with concrete, monetary amounts. *See, e.g., id.* Westgate has standing.

Iowa Rule of Civil Procedure 1.407 governs interventions. Iowa R. Civ. P. 1.407. The district court granted Westgate an intervention of right, which allows a party to intervene in an action if they meet any of the following circumstances:

> *a.* When a statute confers an unconditional right to intervene.
>
> *b.* When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Id.* r. 1.407(1). Westgate has an interest relating to the action because the charging order would impact the proceeds earned and disbursed through the company. The district court's grant of intervention to Westgate as a matter of right was proper.

**B. Charging Order.** The Hefels and Westgate argue the district court erred in granting DuTrac's application for a charging order based on five separate defenses, which we address in turn.

1. *Accord and satisfaction.* The Hefels and Westgate argue that DuTrac's acceptance of funds under the trustee's bankruptcy compromise constituted an accord and satisfaction. DuTrac responds

that the doctrine of accord and satisfaction does not apply because it was not a party to the compromise.

"Accord and satisfaction is a means of discharging a contractual obligation by agreement of the parties to render and accept a different and substituted performance as full satisfaction of the preexisting claim." *Electra Ad Sign Co. v. Cedar Rapids Truck Ctr.*, 316 N.W.2d 876, 879 (Iowa 1982). "An accord and satisfaction may be effected by paying money, doing an act, or giving a promise, provided the thing paid, done, or given is not something to which the creditor was already entitled." *Gibson v. Deuth*, 220 N.W.2d 893, 896 (Iowa 1974) (quoting 1 C.J.S. *Accord and Satisfaction* § 17). With regard to creditors, we have previously stated,

> It is a generally accepted principle of law that when a debtor owes a fixed, certain, due, sum of money, commonly called a liquidated debt, the offer of a less sum to the creditor, with a statement or notice that it is in full payment of the obligation, and its acceptance and retention by the creditor do not bar him from collecting the balance of the debt, in the absence of any new or additional consideration. The reason being that the debtor is already under legal obligation to pay the full amount, and there is no consideration for a release or waiver by the creditor of the unpaid part of the debt. Where the debtor merely does what he is already bound to do, or that which the creditor was already entitled to, there is no consideration to support an accord and satisfaction. The reason back of the rule is that there is no benefit to the creditor, or detriment to the debtor, and the transaction is not a contract, with respect to the unpaid portion of the debt.

*Gibson*, 220 N.W.2d at 896 (quoting *Kellogg v. Iowa State Traveling Men's Ass'n*, 239 Iowa 196, 213–14, 29 N.W.2d 559, 568 (1947)).

It is the defendant who has the burden of establishing the defense of accord and satisfaction. *Electra*, 316 N.W.2d at 880. Accordingly, in order for the doctrine of accord and satisfaction to apply, Westgate and the Hefels must be able to demonstrate valid consideration that was

"offered, intended, and accepted as full satisfaction of the original claim." *Id.* at 879.

During the bankruptcy proceedings, the trustee weighed various options available for obtaining the maximum, reasonable value of Douglas Hefel's interest in Westgate. Ultimately, the trustee elected to recommend that the bankruptcy estate accept $125,000 from the Hefels in exchange for a release of any claim against Douglas Hefel's interest in Westgate. DuTrac objected to the trustee's recommendation because it wanted the trustee to sell Douglas Hefel's interest in Westgate. Despite DuTrac's objection to the compromise, the trustee filed a motion to compromise that included the plan to accept a lump sum from the Hefels. After a hearing, the bankruptcy judge approved the compromise proposed by the trustee. DuTrac appealed the decision, but later dismissed its appeal.

While DuTrac was active in the bankruptcy proceedings and objected to the trustee's plan, it was not a party to the compromise agreement. The compromise agreement was reached between the Hefels and the trustee, and approved by the bankruptcy court. The money ultimately received by DuTrac was merely the payment on its claim in bankruptcy. We find that the bankruptcy court's approval of the compromise agreement, and the payment to DuTrac of its claim in bankruptcy, did not constitute an accord and satisfaction. The compromise agreement determined that Douglas Hefel's interest in Westgate would remain with him personally and would not become part of the bankruptcy estate. It did not bar DuTrac from pursuing that interest outside of bankruptcy proceedings after the Hefels' discharge was revoked. *See, e.g.,* 6 William L. Norton, Jr. & William L. Norton III, *Norton Bankruptcy Law and Practice* 3d § 114:11, Westlaw (Jan. 2017

update) [hereinafter Norton] ("An order revoking confirmation revokes the discharge and reinstates the discharged debts and liens they secure.").

2. *Election of remedies.* The Hefels and Westgate argue that DuTrac's intentional and voluntary actions during the bankruptcy proceeding constituted an election of remedies. DuTrac responds that the doctrine is inapplicable because it was not entitled to a charging order during the original bankruptcy proceeding and because the Hefels' discharge was later revoked.

The party claiming the application of the doctrine of election of remedies must be able to establish three elements: (1) the existence of two or more remedies, (2) an inconsistency between the remedies, and (3) an intelligent and intentional choice of one of the remedies. *State v. Funke*, 531 N.W.2d 124, 127 (Iowa 1995). The doctrine of election of remedies is not favored by the courts, and we will not apply it unless there is evidence of substantial prejudice. *Whalen v. Connelly*, 621 N.W.2d 681, 685–86 (Iowa 2000). If we do apply the doctrine, we apply it in a strict and limited manner. *Gottschalk v. Simpson*, 422 N.W.2d 181, 185 (Iowa 1988).

The first element that the Hefels and Westgate must establish is that DuTrac had two or more remedies available to it. *Funke*, 531 N.W.2d at 127. Westgate claims DuTrac had the option of either entering a charging order during the bankruptcy proceedings or filing a proof of claim to collect its debt through the administration of the bankruptcy estate assets. This is clearly incorrect for a number of reasons. Iowa Code section 489.503 provides that a court may enter a charging order in favor of a "judgment creditor." Iowa Code § 489.503(1). After the Hefels filed for bankruptcy, they were dismissed from the two pending foreclosure suits. Because of the dismissals, at the time of the

bankruptcy proceeding, DuTrac had not yet received a judgment against the Hefels. It was only after the Hefels' discharge was revoked that DuTrac received a judgment against them for the first time. At the time of the bankruptcy proceeding, DuTrac was not a "judgment creditor" for purposes of the charging order statute. *See id.* Furthermore, DuTrac was subject to the automatic stay of collection efforts at that time. *See, e.g.*, 9 Norton § 178.18 ("The filing of a bankruptcy petition operates as an automatic stay of all judicial, administrative, or other actions or proceedings against the debtor . . . ."). DuTrac did not have the remedy of a charging order available to it during the bankruptcy proceedings, and therefore Westgate and the Hefels are unable to prove the first element of the election of remedies doctrine.

However, even if they were able to establish the first element, they are unable to establish elements two or three. After the bankruptcy court revoked the Hefels' discharge due to fraud, DuTrac pursued relief against the Hefels personally by filing a petition in district court against them and ultimately obtaining a judgment. After obtaining its judgment, DuTrac was for the first time able to request a charging order. In all respects, DuTrac has taken actions which are timely and consistent with its rights then existing under the circumstances. There was no time when DuTrac was pursuing inconsistent remedies. DuTrac utilized the proof of claim to collect its debt from the Hefels' bankruptcy estate; DuTrac used the petition and subsequent charging order to collect its debt from the Hefels personally. Certainly, pursuing the charging order when it did is not an inconsistent remedy, and Westgate and the Hefels have failed to prove otherwise. Finally, there is no evidence that DuTrac made an intelligent and intentional choice of one of the remedies. *Funke*, 531 N.W.2d at 127. The compromise agreement was between the Hefels

and the trustee in bankruptcy. DuTrac was never a party to the compromise agreement. The Hefels and Westgate were unable to prove the equitable defense of election of remedies.

3. *Waiver.* The Hefels and Westgate argue that DuTrac's dismissal of its appeal of the compromise agreement and its acceptance of payment on its claim in bankruptcy constitutes a waiver of any right it now has to obtain a charging order. Waiver applies when a party voluntarily relinquishes a known right. *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 629 (Iowa 2000); *see also Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982). "The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such a right." *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co.*, 596 N.W.2d 546, 552 (Iowa 1999) (quoting *Scheetz v. IMT Ins. Co. (Mut.)*, 324 N.W.2d 302, 304 (Iowa 1982)). Waiver can be either express or implied. *Id.*

Several things are worth noting with respect to this claim of waiver. First, had the bankruptcy court not found that the Hefels committed fraud in their bankruptcy proceedings, this pending action would have been unnecessary and unavailable to DuTrac. DuTrac would have received its distribution from the Hefels' bankruptcy with no additional legal recourse for the collection of its debt. There was no waiver of any known right by DuTrac before it obtained relief from the bankruptcy court when the court revoked the Hefels' discharge.

More importantly, as discussed above, at the time of the bankruptcy proceedings, DuTrac was not yet a judgment creditor. *See* Iowa Code § 489.503(1). DuTrac therefore did not yet have the right to request a charging order under Iowa Code section 489.503. *See id.* Because the right did not exist, DuTrac could not have voluntarily

relinquished it. *See, e.g., IBP, Inc.*, 604 N.W.2d at 629. The defense of waiver does not apply to the facts of this case.

4. *Operating agreement.* The Hefels and Westgate claim the district court erred in granting the charging order because Westgate's operating agreement prohibits the transfer of an ownership interest without the other member's consent. DuTrac responds that the prohibition on the transfer of interests does not affect the charging order because the charging order is not a transfer of Douglas Hefel's interest. We agree.

> Iowa Code section 489.503 defines a charging order:
>
> A charging order constitutes a lien on a judgment debtor's transferable interest and requires the limited liability company to pay over to the person to which the charging order was issued any distribution that would otherwise be paid to the judgment debtor.

Iowa Code § 489.503(1). Distribution is defined as "a transfer of money or other property from a limited liability company to another person on account of a transferable interest." *Id.* § 489.102(5). Transferable interest is defined as "the right . . . to receive distributions from a limited liability company in accordance with the operating agreement, whether or not the person remains a member or continues to own any part of the right." *Id.* § 489.102(24). A transferable interest is personal property. *Id.* § 489.501. The transfer of a transferable interest does not cause a member's disassociation or the dissolution or winding up of the LLC's activities. *Id.* § 489.502(1). The transferee is not entitled to participate in management of the LLC, nor is the transferee able to access records or information about the company's activities. *Id.* When the transfer of a transferable interest occurs, the transferor (i.e., Douglas Hefel) "retains the rights of a member other than the interest in distributions

transferred and retains all duties and obligations of a member." *Id.* § 489.502(7).

There is no language in Westgate's operating agreement that prevents the transfer of distributions.[6] The operating agreement only prohibits the transfer of an ownership interest. Because the charging order does not transfer any ownership interest in Westgate, the operating agreement does not prevent the court from entering a charging order.

5. *Motion to compromise.* The Hefels and Westgate argue the motion to compromise ordered by the bankruptcy court remains in effect, and it therefore prevented the district court from entering a charging order. DuTrac responds that Westgate did not preserve error on this argument because the district court did not consider or rule on it.

Generally, we will not decide an issue presented to us on appeal that was not presented to and decided by the district court. *See, e.g., City of Postville v. Upper Explorerland Reg'l Planning Comm'n*, 834 N.W.2d 1, 8 (Iowa 2013). For error to be preserved on an issue, it must be both

---

[6]The operating agreement references ownership interests in multiple places. Section 3.8 provides that the units of the company and "the interests represented thereby" shall not be transferable without meeting the terms and conditions of the agreement. Section 8.1 provides,

> No member shall dispose of his Units in whole or in part, during his lifetime or after his death, except as provided in this Agreement. The term "dispose" includes, but is not limited to, acts of selling, signing, transferring, pledging, encumbering, giving or any other form of conveying whether a voluntary, involuntary, or by operation of law.

Additionally, section 8.6 provides that the assignment of a unit does not entitle the assignee

> to participate in the management and affairs of the Company or to become or to exercise any rights of a Member . . . but rather only entitles the assignee to receive, to the extent assigned, only the *distributions* to which assignor would be entitled.

(Emphasis added.)

raised and decided by the district court. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 883 (Iowa 2014). If a party raises an issue and the district court does not rule on it, the party must file a motion to request a ruling on the issue. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Here, Westgate did raise the issue in the district court in its brief. However, the district court order never addressed the argument that the motion to compromise remains in effect. Westgate never filed a motion requesting a ruling on the issue and therefore did not properly preserve error.

**C. Motion to Quash.** DuTrac filed and was granted a request for execution. Thereafter, it directed the sheriff to garnish and levy described wages and property from the Hefels, and provided proper notice to the Hefels. The Hefels filed a motion to quash the multiple garnishments and levies. They argue that the Iowa Code only allows one execution, but DuTrac brought multiple execution actions. DuTrac responds that it only obtained one general execution, but acknowledges that it directed multiple garnishments and levies to the sheriff to collect under the general execution. DuTrac argues this does not violate the Iowa Code because the multiple garnishments and levies were all under one execution.

Iowa Code section 626.3 provides that "[o]nly one *execution* shall be in existence at the same time." Iowa Code § 626.3 (emphasis added). DuTrac argues that it only obtained one execution, while the Hefels and Westgate argue that the multiple garnishments and levies fall under the statute as well. When we are asked to interpret a statute, we apply well-settled principles of statutory interpretation:

> The purpose of statutory interpretation is to determine the legislature's intent. We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.

*Howse*, 875 N.W.2d at 691 (quoting *Schaefer v. Putnam*, 841 N.W.2d 68, 75 (Iowa 2013)).

"Execution" can be defined as the "[j]udicial enforcement of a money judgment, usu. by seizing and selling the judgment debtor's property" or "[a] court order directing a sheriff or other officer to enforce a judgment, usu. by seizing and selling the judgment debtor's property." *Execution, Black's Law Dictionary* (10th ed. 2014). Whereas "garnishment" can be defined as

> A proceeding whereby a plaintiff creditor, *i.e.,* garnishor, seeks to subject to his or her claim the property or money of a third party, *i.e.,* garnishee, owed by such party to defendant debtor, *i.e.,* principal defendant. Satisfaction of an indebtedness out of property or credits of debtor in possession of, or owing by, a third person. An ancillary remedy *in aid of execution* to obtain payment of a judgment.

*Designate, Black's Law Dictionary* (6th ed. 1990) (citations omitted) (emphasis added). Likewise, "levy" can be defined as "to impose or collect . . . by legal process or authority," "to seize in satisfaction of a legal claim or judgment," or "to carry into effect (as a writ of execution)." *Levy, Webster's Third New International Dictionary* (unabr. ed. 2002).

Further, the language used throughout chapter 626 supports the enforcement of a single execution with multiple garnishments or levies. Section 626.4 provides,

> When the plaintiff in judgment shall file in any court in which a judgment has been entered an affidavit made by

the plaintiff, the plaintiff's agent or attorney, or by the officer to whom the execution was issued, that an outstanding execution has been lost or destroyed, the clerk of such court may issue a duplicate execution as of the date of the lost execution, which shall have the same force and effect as the original execution, and *any levy made under the execution* so lost shall have the same force and effect under the duplicate execution as under the original.

Iowa Code § 626.4 (emphasis added). The language "*any* levy" indicates that more than one levy may be available under the single writ of execution. Section 626.28 provides,

Where parties have been garnished under it, the officer shall return to the clerk of court a copy of the execution with all the officer's doings thereon, so far as they relate to the *garnishments*, and the clerk shall docket an action thereon without fee, and thereafter the proceedings shall conform to proceedings in garnishment under attachments as nearly as may be.

Iowa Code § 626.28 (emphasis added). The term "the *garnishments*" indicates that multiple garnishments may exist under a single execution.

We find that the language of the statute is unambiguous. Section 626.3 prevents more than one execution, but makes no mention of garnishments or levies. DuTrac filed a single grant of execution, and thereafter directed the sheriff to garnish or levy the Hefels' property in order to fulfill the grant of execution. There is no statutory prohibition to the issuance of multiple garnishments and levies under a single general execution. We reverse the decision of the district court granting the motion to quash.

### IV. Conclusion.

For the above reasons, we affirm the decision of the district court granting DuTrac's request for entry of the charging order. However, we reverse the decision of the district court granting the motion to quash. We remand this case to the district court.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except Appel, J., who takes no part.