# IN THE COURT OF APPEALS OF IOWA

No. 16-1534
Filed April 18, 2018

**THERESA SEEBERGER,**
    Petitioner-Appellee/Cross-Appellant,

**vs.**

**DAVENPORT CIVIL RIGHTS COMMISSION,**
    Respondent-Appellant/Cross-Appellee,

**and**

**MICHELLE SCHREURS,**
    Intervenor-Appellant/Cross-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

The Davenport Civil Rights Commission and Michelle Schreurs appeal and Theresa Seeberger cross-appeals a district court ruling on Seeberger's petition for judicial review. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Latrice L. Lacey, Davenport, for appellant Davenport Civil Rights Commission.

Dorothy A. O'Brien of O'Brien and Marquard, P.L.C., Davenport, for appellant Michelle Schreurs.

Randall D. Armentrout and Katie L. Graham of Nyemaster Goode, P.C., Des Moines, for appellee.

Heard by Potterfield, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

The Davenport Civil Rights Commission (Commission) and Michelle Schreurs appeal a district court ruling on Theresa Seeberger's petition for judicial review following an agency determination of Schreurs's housing-discrimination complaint. The Commission contends the district court erred in concluding Schreurs's complaint was not filed under the federal Fair Housing Act (FHA) and the Davenport Municipal Code (2014) does not authorize an award of attorney fees in the context of discriminatory housing practices. Schreurs argues the district court erred in concluding the municipal code and FHA do not entitle her to an award of attorney fees incurred during administrative proceedings and abused its discretion in refusing to award her attorney fees in the judicial-review proceeding.

Theresa Seeberger cross-appeals the same ruling. She asserts that holding her liable for her discriminatory statements violates the First Amendment to the United States Constitution and article I, section 7 of the Iowa Constitution because the statements she made amount to protected speech.

I.      **Background Facts and Proceedings**

Seeberger purchased a three-bedroom residential property in Davenport, Iowa in 2011. After living in the residence for approximately one year, Seeberger married in October 2012 and moved into her spouse's home. Seeberger owned four cats at this time, but her spouse was allergic to them. Seeberger was not willing to give up her house or her cats, so she decided to retain ownership of the home and rent the rooms to tenants. After she began renting the property to tenants, she visited the property nearly every day to feed her cats. She also kept much of her clothing and many of her furnishings in the home. In or about August

2013, Schreurs and her daughter moved into the property as tenants; the tenancy was not memorialized in a written agreement. At that time, there were also two other tenants residing in the home. Also around that time, Seeberger separated from her spouse and moved to a nearby apartment, where she lived until the end of August 2014. By mid-2014, Schreurs and her daughter were the only tenants in the home. Seeberger testified that, overall, Schreurs and her daughter were good tenants.

On or about September 16, 2014, Seeberger visited the home and discovered a bottle of prenatal vitamins on the kitchen counter. Seeberger took a photograph of the bottle, text messaged it to Schreurs, and questioned, "Something I should know about?" The following day, Seeberger returned to the home and asked Schreurs if she had received the text message. When Schreurs responded in the negative, Seeberger showed her the photograph of the prenatal vitamins. Schreurs excitedly advised Seeberger her daughter, around fifteen years old at the time, was pregnant. Seeberger, after contemplating the situation for "thirty seconds to a minute," angrily advised Schreurs, "You guys will have to be out in thirty days." Seeberger then stated, "You don't pay rent on time the way it is, now you're bringing another person into the mix." Seeberger also stated "she's taking prenatal vitamins, . . . . obviously you're going to keep the baby." Seeberger testified she was disappointed with Schreurs for her irresponsibility in allowing her young daughter to become pregnant. Seeberger also asserted she terminated the tenancy because she wanted her house back to herself. Seeberger testified she began drafting a notice to terminate Schreurs's tenancy on September 15, but she did not tender the notice to Schreurs until after her discovery of the prenatal

vitamins. In her interview with the Commission, however, she stated she did not draft this notice until September 18. This notice advised Schreurs she needed to vacate the property by October 19. Seeberger subsequently advised Schreurs she would start staying at the home on September 26.

On October 1, Seeberger, via text message, asked Schreurs whether one of her ex-boyfriends was the father of her grandchild-to-be. Schreurs came to the home with her boyfriend. At this time, Seeberger, who was at the home, confronted Schreurs, repeating her inquiry. This exchange upset Schreurs. Schreurs and her daughter were completely moved out of the home by October 5. After Schreurs and her daughter's eviction, Seeberger allowed another tenant to live in the home.

In November 2014, Schreurs filed a housing-discrimination complaint with the Commission alleging Seeberger discriminated against her on the basis of her familial status by making discriminatory statements. The complaint was amended in February 2015 and again in March. Her complaint and amended complaints noted they were filed pursuant to Davenport Municipal Code section 2.58.305(C) and Section 804(c) of the FHA.[1] Following its investigation, the Commission issued a probable cause finding of discrimination.

The matter proceeded to a public hearing before an administrative law judge (ALJ) in November. The ALJ concluded, with regard to Seeberger's statements on September 16 and 17, that "[a]n ordinary listener listening to [her] statements would find her statements discriminatory on the basis of familial status" and "Seeberger engaged in a discriminatory housing practice by making the

---

[1] Codified at 42 U.S.C. § 3604(c).

statements." The ALJ awarded Schreurs $35,000.00 in emotional-distress damages and imposed a civil penalty in the amount of $10,000.00. The ALJ subsequently awarded Schreurs $23,881.80 in costs and attorney fees pursuant to Davenport Municipal Code section 2.58.350(G).[2] The Commission approved the ALJ's decision in its entirety, with the exception of the award of damages, which it reduced to $17,500.00.

In February 2016, Seeberger filed a petition for judicial review. In her subsequent brief in support of her petition, Seeberger argued, among other things, that the agency action was unconstitutional because it violated her freedom-of-speech rights and the Davenport Municipal Code does not provide for an award of attorney fees prior to judicial review. In their briefings, Schreurs and the Commission argued Seeberger's statements were not protected speech and Schreurs was entitled to attorney fees under municipal code section 2.58.175(A)(8)[3] or, in the alternative, the FHA.

The district court entered a written ruling in July 2016. The court concluded (1) Seeberger's discriminatory statements amounted to commercial speech, their utterance was illegal, and they were therefore not protected by the First Amendment and (2) Davenport Municipal Code section 2.58.175(A)(8) "does not clearly authorize an award of attorney fees in the context of a discriminatory housing practice." The court therefore vacated the attorney fee award.

---

[2] This section, entitled "Fair Housing – Judicial Review," provides: "The [ALJ] or the court may at its discretion allow the prevailing party, other than the commission, reasonable attorney fees and costs resulting from any administrative proceeding brought under this section, any court proceeding arising therefrom, or any civil action."

[3] Schreurs and the Commission did not argue on judicial review that Schreurs was entitled to fees under the municipal code provision the ALJ actually awarded them, section 2.58.350(G).

Schreurs moved for additional findings. In her motion, she requested the court to reconsider her entitlement to attorney fees under the municipal code and expand its ruling to consider her argument that she was also entitled to attorney fees under the FHA. The Commission also moved for additional findings and requested the court to consider Schreurs's entitlement to attorney fees under Davenport Municipal Code section 2.58.350(G) and the FHA. Thereafter, pursuant to Davenport Municipal Code sections 2.58.175(A)(8) and 2.58.350(G) and the FHA, Schreurs requested an award of attorney fees incurred in the judicial-review proceeding.

Following a hearing, the district court denied all pending motions. With regard to Schreurs's entitlement to attorney fees under the FHA, the court ruled "the mere fact that the . . . complaint was cross-filed with the federal authorities does not expand the [Commission's] authority to award attorney fees beyond what is allowed by the city ordinance" and fees under the FHA "were unavailable to [Schreurs] in her state court proceeding." The court further concluded that the issue of Schreurs's entitlement to fees under municipal code section 2.58.350(G) was waived because the parties "chose not to argue this statutory basis for any claim for fees, relying instead entirely on § 2.58.175[(A)](8)." The court declined to reconsider its determination as to Schreurs's entitlement to fees under section 2.58.175(A)(8). Finally, the court declined both Seeberger and Schreurs's requests for attorney fees on judicial review. As noted, all parties appeal.

## II. Standards of Review

We review constitutional claims under the First Amendment de novo. *See Mitchell Cty. v. Zimmerman*, 810 N.W.2d 1, 6 (Iowa 2012). The sole question on

appellate review of a district court's judicial review of an agency determination is whether the district court correctly applied the law. *See Foods, Inc. v. Iowa Civil Rights Comm'n*, 318 N.W.2d 162, 164 (Iowa 1982). "To the extent we are asked to engage in statutory interpretation, our review is for correction of errors at law." *DuTrac Cmty. Credit Union v. Hefel*, 893 N.W.2d 282, 289 (Iowa 2017). Review of the district court's decision to not award attorney fees in the district court proceeding is for an abuse of discretion. *See Fennelly v. A-1 Mach. & Tool Co.*, 728 N.W.2d 163, 167 (Iowa 2006).

## III. Freedom of Speech

Seeberger lodges an as-applied challenge to Davenport Municipal Code section 2.58.305(C), which provides it shall be unlawful to:

> Make, print, or publish, or cause to be made printed or published any notice, statement or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation or discrimination.

Seeberger argues her statements are not subject to the commercial-speech doctrine because they were inextricably intertwined with fully-protected speech or, in the alternative, if her statements amount to commercial speech, then the statements are still protected speech because they relate to a lawful activity.

The United States Supreme Court has recognized a "distinction between speech [involving] a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980) (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56 (1978)). These other varieties of speech generally include communications concerning "politics,

nationalism, religion, or other matters of opinion." *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321, 2332 (2013) (quoting *W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). "The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed speech." *Cent. Hudson*, 447 U.S. at 563. However, where some commercial speech and some protected speech are "inextricably intertwined" as "component parts of a single speech," courts "cannot parcel out the speech, applying one test to one phrase and another test to another phrase." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 798 (1988). Under such circumstances, the test for fully-protected speech is applicable. *Id.*

Seeberger does not contest that her statements were discriminatory and related to a commercial transaction. Instead, she contends her discriminatory, commercial statements to Schreurs were inextricably intertwined with fully-protected speech that she thought Schreurs was an irresponsible parent. Seeberger's first statement—by text message, and later in person—was, "Something I should know about?" The obvious context of the question was based on Seeberger's status as a landlord and Schreurs's status as a tenant. The exchange between them that followed cements the conclusion that all of Seeberger's remarks were in the context of their relationship as landlord and tenant. Although Seeberger also made reference to a history of Schreurs paying rent late, the context makes clear Schreurs's changing familial status was the basis for the termination of the tenancy. While Seeberger may hold political, religious, or other beliefs the expression of which might be protected in some contexts, the

statements made to Schreurs were plainly directed at telling Schreurs her tenancy was being terminated because of her familial status.

Seeberger testified she was disappointed with Schreurs for her irresponsibility in allowing her young daughter to become pregnant.[4]  Seeberger's statements, on their face, do not indicate that her speech was non-commercial in nature or was otherwise based on a matter of religion, ideology, or philosophy, or on a position concerning responsible parenting.  Rather, her September 17 statements purely amounted to her pronouncement to Schreurs that her familial status was the primary basis for terminating Schreurs's tenancy.  We conclude Seeberger's statements were not inextricably intertwined with any form of fully-protected speech.  Seeberger's concession that the statements terminating the tenancy were commercial in nature, together with our conclusion that such statements were not inextricably intertwined with protected speech, necessitate the application of the commercial-speech analysis laid out in *Central Hudson*.

For commercial speech to be protected by the First Amendment, "it at least must concern lawful activity and not be misleading."  *Cent. Hudson*, 447 U.S. at 566.[5]  Our only concern in this case is whether the statement concerned a lawful activity.  Seeberger concedes that her statements were in violation of Davenport Municipal Code section 2.58.305(C), which prohibits all landlords from making discriminatory statements in relation to the rental of a dwelling.  She argues,

---

[4] Our analysis is based on the words spoken to Schreurs in the course of Seeberger's termination of the tenancy, and not on Seeberger's later testimonial characterizations.

[5] "The four parts of the *Central Hudson* test are not entirely discrete.  All are important and, to a certain extent, interrelated: Each raises a relevant question that may not be dispositive to the First Amendment inquiry, but the answer to which may inform a judgment concerning the other three."  *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 183–84 (1999).

however, because she owned fewer than four single-family homes, the actual termination of Schreurs's tenancy on the basis of her familial status was not illegal and, as such, the statement concerned a lawful activity. *See* Davenport, Iowa Mun. Code § 2.58.310(A)(1)(a) ("Nothing in subsection 2.58.305 of this Chapter *other than subsection 2.58.305(C)* shall apply to . . . [a]ny single-family house sold or rented by an owner provided that . . . [t]he private individual owner does not own more than three (3) such single-family houses at any one time." (emphasis added)). For the purposes of Seeberger's as-applied challenge, we will assume without deciding that her statements concerned a lawful activity.

The next step in the *Central Hudson* test "asks whether the asserted governmental interest served by the speech restriction is substantial." *Greater New Orleans Broad. Ass'n, Inc.*, 527 U.S. at 185. The Commission argues the interest in prohibiting discriminatory statements in housing is substantial. The Iowa Supreme Court has stated the government has a substantial interest in preventing discrimination in employment. *Baker v. City of Iowa City*, 867 N.W.2d 44, 54 (Iowa 2015). We conclude the government's interest in preventing discriminatory statements in housing is at least equally substantial to its interest in preventing discrimination in employment.

Finally, we are required to determine if the ordinance advances the objective of preventing discriminatory statements in housing and, if so, whether it is more extensive than necessary. *Cent. Hudson*, 447 U.S. at 566. The ordinance clearly advances the objective of preventing the making of discriminatory statements in housing. This is so even though the ordinance does not effectually prohibit discrete discrimination in all housing transactions. As applied in this case,

the ordinance simply renders it unlawful to make any statement with respect to the "rental of a dwelling that indicates any preference, limitation, or discrimination based on" familial status "or an intention to make any such preference, limitation or discrimination." Davenport, Iowa Mun. Code § 2.58.305(C). As Seeberger correctly points out, landlords owning no more than three single-family homes may legally discriminate in housing decisions on the basis of familial status, so long as they do not make a statement to that effect. *Id.* §§ 2.58.305(C), .310(A)(1)(a). The challenged ordinance merely prohibits landlords from subjecting prospective tenants to the stigmas associated with knowingly being discriminated against. For these reasons, we find the ordinance is not more extensive than necessary to serve the substantial interest of preventing discriminatory statements in housing transactions.

As such, we conclude the ordinance is not an unconstitutional infringement upon Seeberger's freedom-of-speech rights. We therefore affirm the district court's decision to uphold Seeberger's liability under the ordinance.

## IV. Attorney Fees

### A. Administrative Proceedings

Schreurs and the Commission contend Schreurs was entitled to attorney fees incurred in the administrative proceeding under Davenport Municipal Code sections 2.58.175(A)(8) and 2.58.350(G) or, in the alternative, the FHA. The district court considered the argument under section 2.58.350(G) waived and concluded fees under the FHA were unavailable. The court also concluded section 2.58.175(A)(8) "does not clearly authorize an award of attorney fees in the context of a discriminatory housing practice." The court reasoned section 2.58.175,

entitled "Remedial Action," only concerns unfair or discriminatory practices in areas other than housing.

Chapter 258 of the municipal code is set out in three divisions: (1) general provisions, (2) unfair practices, and (3) fair housing. We first focus on division two, unfair practices, which is comprised of sections 2.58.100 through 2.58.190. Section 2.58.175 falls within division two. The first four sections concern unfair practices in employment, accommodations or services, credit, education, and aiding or abetting. *See id.* §§ 2.58.100, .110, .120, .125, .130. The next section relates to retaliation, and specifically includes housing matters, as does the following section, which concerns complaint procedures. *Id.* §§ 2.58.140, .150. The next two sections govern conciliation and public hearing; neither section excludes housing complaints, and our review of the record indicates both sections applied in this case. *See id.* §§ 2.58.160, .170. The public hearing provision provides that, if

> the hearing officer determines that the respondent has engaged in a discriminatory or unfair practice, the hearing officer shall . . . issue an order in writing requiring the respondent . . . to take the necessary *remedial action* as in the judgment the hearing officer will effectuate the purposes of *this chapter*.

*Id.* § 2.58.170(J) (emphasis added). Thereafter, the Commission reviews the decision and, if in agreement with the hearing officer, "shall issue an order requiring the respondent . . . to take necessary *remedial action* as in the judgment of the commission will carry out the purposes of *this chapter*." *Id.* § 2.58.170(L) (emphasis added).

Next is the remedial action provision, which provides, "The *remedial action* ordered by the Commission may include . . . [p]ayment to the complainant of . . .

reasonable attorney fees [and] payment of costs of hearing." *Id.* § 2.58.175(A)(8)–(9). Another provision in the remedial action section allows the Commission to order, obviously in relation to housing cases, the "[s]ale, exchange, lease, rental, assignment or sublease of real property to an individual." *Id.* § 2.58.175(A)(4). The section also provides specific remedial actions in relation to employment, credit, education, and public accommodations. *Id.* § 2.58.175(A)(1), (2), (3), (5), (7). The final two sections of division two govern judicial review and court enforcement. *See id.* §§ 2.58.180, .190. Again, housing complaints are not specifically exempted from these provisions.

On the other hand, division three of chapter 258, governing fair housing, includes a provision that, "[i]f the administrative law judge finds that a respondent has engaged in or is about to engage in a discriminatory housing practice, such administrative law judge shall promptly issue an order for such relief as may be appropriate, *which may include* actual damages and injunctive or other equitable relief." *Id.* § 2.58.340(F)(3) (emphasis added).

Despite these dual and differing modes for relief, based on the plain language and statutory scheme of the ordinance, we conclude the remedial action provision in division two, section 2.58.175, encompasses all areas of discrimination, including housing. Because the section provides specific remedies for each of the differing areas, we conclude the overall remedies included in subsections 8 and 9 cover all of those differing areas. We therefore reverse the district court's determination that Schreurs was not entitled to the attorney fees incurred in the administrative proceeding. Because the district court noted its "disposition render[ed] moot [Seeberger's] alternative argument that the fee award

was excessive," we remand the case to the district court to determine whether the attorney-fee award was excessive. *See De Stefano v. Apartments Downtown, Inc.*, 879 N.W.2d 155, 191 (Iowa 2016). This disposition makes it unnecessary for us to decide whether Schreurs was entitled to attorney fees under 2.58.350(G) or, in the alternative, the FHA.

B. Judicial-Review Proceeding

Finally, Schreurs argues the district court abused its discretion in refusing to award her attorney fees in the judicial-review proceeding. Pursuant to Davenport Municipal Code section 2.58.350(G), "the court *may* at its discretion allow the prevailing party . . . reasonable attorney fees and costs resulting from" a judicial-review proceeding. (Emphasis added.) "[F]ee provisions using the word 'may' place the decision about whether to award *any* attorney fees within the sound discretion of the district court." *Lee v. State*, 874 N.W.2d 631, 644 (Iowa 2016). Similar to the FHA, an award of attorney fees in a judicial-review proceeding under the Davenport Municipal code is not mandatory. *See id.* at 644–45 (noting that when a "fee provision employs the word 'shall' instead of the word 'may,' it *requires* the district court to award attorney fees"); *see also* 42 U.S.C. § 3612(p). Because the ordinance renders any award of attorney fees discretionary, "[r]eversal is warranted only when the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable." *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 732 (Iowa 2005) (quoting *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339, 342 (Iowa 2000)).

In its ruling on attorney fees, the district court noted its prior affirmance of the determination concerning Seeberger's liability, but also its reversal of the

Commission's award of damages and remand for reconsideration. With this dichotomy in mind, the district court determined neither party was the "prevailing party" in the judicial-review proceeding and therefore entitled to attorney fees. We do not find this ground for denying an award of attorney fees clearly unreasonable or untenable. We therefore affirm the district court's denial of Schreurs's request for attorney fees in the judicial-review proceeding.

**V.     Conclusion**

In sum, we conclude the challenged ordinance is not an unconstitutional infringement upon Seeberger's freedom-of-speech rights and affirm the agency and district court's findings of liability. We reverse the district court's determination that Schreurs was not entitled to the attorney fees incurred in the administrative proceeding and remand the matter to the district court to consider whether the attorney-fee award was excessive. We affirm the district court's denial of Schreurs's request for attorney fees in the judicial-review proceeding.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS APPEAL.**