**C–THRU CONTAINER CORPORATION, Appellant,**

v.

**MIDLAND MANUFACTURING COMPANY, Appellee.**

No. 94–280.

Supreme Court of Iowa.

June 21, 1995.

Herbert S. Selby of Selby, Updegraff & Smith, Newton, for appellant.

Terry Rickers of Matthias, Campbell, Tyler, Nuzum, Greta & Rickers, Newton, for appellee.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

This case requires us to interpret and apply the trade-usage exception to the parol evidence rule embodied in Iowa Code chapter 554, Iowa's Uniform Commercial Code (U.C.C.). The trial court held that parol evidence of trade usage was inadmissible and granted summary judgment to the defendant, Midland Manufacturing Company. We agree with the contrary decision of the court of appeals that the challenged evidence was admissible and generated a question of fact

that prevented summary judgment. Therefore, we affirm the decision of the court of appeals and reverse the judgment of the district court.

## I. *Background Facts and Proceedings.*

C–Thru Container Corporation entered into a contract with Midland Manufacturing Company in March of 1989. In this contract, Midland agreed to purchase bottle-making equipment from C–Thru and to make commercially acceptable bottles for C–Thru. Midland was to pay for the equipment by giving C–Thru a credit against C–Thru's bottle purchases. The contract stated that C–Thru expected to order between 500,000 and 900,000 bottles in 1989. Finally, the contract also provided that if Midland failed to manufacture the bottles, C–Thru could require Midland to pay the entire purchase price plus interest within thirty days.

Midland picked up the equipment as agreed and later sent a notice to C–Thru that it was ready to begin production. C–Thru never ordered any bottles from Midland, but instead purchased its bottles from another supplier at a lower price. C–Thru claims that in numerous phone conversations between the parties Midland indicated that it was unable to produce commercially acceptable bottles for C–Thru.

In 1992, Midland gave C–Thru notice that it was rescinding the 1989 contract based on C–Thru's failure to order any bottles. C–Thru did not respond to this notice. Midland later sent C–Thru notice that it was claiming an artisan's lien for the expenses of moving, rebuilding and repairing the machinery. Midland eventually foreclosed the artisan's lien and sold the machinery.

Approximately one month later, C–Thru notified Midland that Midland had failed to comply with the terms of the contract and that the full purchase price plus interest was due and payable within thirty days. When Midland failed to pay C–Thru the amount requested, C–Thru filed a petition alleging that Midland had breached the contract by being incapable of producing the bottles as agreed to in the contract.

Midland filed a motion for summary judgment. It contended that the contract did not require that it demonstrate an ability to manufacture commercially acceptable bottles as a condition precedent to C–Thru's obligation to place an order. Midland asserted that the contract merely required that it manufacture commercially acceptable bottles in response to an order from C–Thru. Because C–Thru never placed an order, Midland argued that it had not breached the contract by failing to manufacture any bottles.

C–Thru resisted Midland's motion. It argued that a material issue of fact existed on whether Midland was unable to manufacture the bottles, thereby excusing C–Thru's failure to place an order. As proof that Midland could not manufacture the bottles, C–Thru pointed to Midland's failure to provide sample bottles. C–Thru relied on deposition testimony that the practice in the bottle-making industry was for the bottle manufacturer to provide sample bottles to verify that it could make commercially acceptable bottles before the purchaser placed any orders.

In ruling on Midland's motion for summary judgment, the trial court found no sample container requirement in the written contract. The court also held that the parol evidence rule precluded consideration of any evidence that the practice in the trade was to provide sample bottles before receiving an order. It concluded that no genuine issue of material fact existed and granted Midland summary judgment. The court of appeals reversed the district court's ruling, concluding that evidence regarding the trade practice should have been considered. We granted Midland's application for further review.

## II. *Standard of Review.*

 We uphold summary judgment when the moving party shows no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Shaw v. Soo Line R.R.*, 463 N.W.2d 51, 53 (Iowa 1990). To decide if the moving party has met this burden, we review the record in the light most favorable to the party opposing summary judgment. *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 811 (Iowa 1994).

## III. *Should Usage-of-Trade Evidence Be Allowed?*

 Under the common law of Iowa, parol evidence is admissible to shed light on the parties' intentions but it may not be used to modify or add to the contract terms. *Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg*, 461 N.W.2d 598, 600 (Iowa 1990); *Associated Grocers of Iowa Coop., Inc. v. West*, 297 N.W.2d 103, 109 (Iowa 1980). Nevertheless, sale-of-goods contracts, such as the agreement here, are governed by Iowa Code chapter 554, the Iowa Uniform Commercial Code. Section 554.2202 contains the applicable U.C.C. parol evidence rule and it states:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be *explained or supplemented*
>
> *a.* by course of dealing or *usage of trade* (section 554.1205) or by course of performance (section 554.2208); and
>
> *b.* by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Iowa Code § 554.2202 (1993) (emphasis added). Thus, unlike the common law, parol evidence may be used to supplement a fully integrated agreement governed by the U.C.C. if the evidence falls within the definition of usage of trade.

The Iowa U.C.C. includes the following definition of usage of trade:

> 2. A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts....

*Id.* § 554.1205(2). Section 554.1205 goes on to provide that any usage of trade of which the parties are or should be aware supplements their agreement. *Id.* § 554.1205(3).

Midland does not dispute that a trier of fact could find that the alleged practice in the bottling industry of providing samples to a prospective purchaser is a usage of trade. However, Midland argues usage-of-trade evidence may not be used to add a new term to a contract that is complete and unambiguous.

■ We first reject Midland's argument that evidence of trade usage is admissible only when the contract is ambiguous. There is no such requirement in section 554.2202. Moreover, the official comment to section 2–202 of the Uniform Commercial Code, which is identical to section 554.2202, states that this section "definitely rejects" a requirement that the language of the contract be ambiguous as a condition precedent to the admission of trade-usage evidence. U.C.C. § 2–202 cmt. I (1977); *accord Amoco Prod. Co. v. Western Slope Gas Co.*, 754 F.2d 303, 308 (10th Cir.1985); *American Mach. & Tool Co. v. Strite–Anderson Mfg. Co.*, 353 N.W.2d 592, 597 (Minn.Ct.App.1984).

■ We also hold that even a "complete" contract may be explained or supplemented by parol evidence of trade usages.[1] *Ralph's Distributing Co. v. AMF, Inc.*, 667 F.2d 670, 673 (8th Cir.1981) (applying Iowa law); James J. White & Robert S. Summers, *Uniform Commercial Code* § 2–10, at 85, 89; § 3–3, at 98 (2d ed. 1980) [hereinafter "White & Summers"]. As the official comment to section 2–202 states, commercial sales contracts "are to be read on the assumption that the course of prior dealings between the parties and the usages of trade were taken for granted when the document was phrased." U.C.C. § 2–202 cmt. 2 (1977). Therefore, even a completely integrated contract may be supplemented by practices in the industry that do not contradict express terms of the contract. 2 William D. Hawk-

land, *Uniform Commercial Code Series* § 2–202:03, at 47 (1984).

■ That brings us to the remaining argument made by Midland—that C–Thru may not use parol evidence to add a new term to the agreement. Section 554.2202 says that when parol evidence shows a usage of trade that does not contradict a contract term[2], the evidence is admissible to "supplement" the contract. We look to the common meaning of the word "supplement." *State v. Simmons*, 500 N.W.2d 58, 59 (Iowa 1993) (we give words used in a statute their ordinary meaning, including reference to the dictionary definition). "Supplement" means "to add ... to." Webster's Third New Int'l Dictionary 2297 (1993). Consequently, the trade-usage evidence upon which C–Thru relies is admissible even though it adds a new term to the contract. White & Summers, § 3–3 (usage of trade may itself constitute a contract term).

## IV. *Summary.*

■ The usage-of-trade evidence offered by C–Thru does not contradict any explicit contractual term. It supplements the written agreement which is permitted under section 554.2202. Taking this evidence in a light most favorable to C–Thru, we conclude there exists a genuine issue of fact concerning the performance required of Midland as a prerequisite to C–Thru's obligation to place an order. Therefore, summary judgment is not appropriate. We affirm the decision of the court of appeals, reverse the judgment of the district court and remand for further proceedings.

**DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED.**

---

**1.** The contract here stated that "[t]his agreement constitutes the entire agreement between C–Thru and Midland and supersedes any and all prior agreements between them."

**2.** Midland makes no argument that the sample requirement contradicts a term of the contract. In fact, the contract is silent on whether Midland must verify its ability to manufacture commercially acceptable bottles prior to C–Thru's placement of an order.