IOWA COMPREHENSIVE PETROLEUM UNDERGROUND STORAGE TANK FUND BOARD, Appellant,

v.

FEDERATED MUTUAL INSURANCE COMPANY, Appellee.

No. 97–1923.

Supreme Court of Iowa.

July 8, 1999.

John R. Perkins and Joel H. Dorman of Shearer, Templer & Pingel, P.C., West Des Moines, for appellant.

Robert L. Graff and Laura J. Hanson of Meagher & Geer, Minneapolis, Minnesota, and Richard G. Santi of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and CADY, JJ.

SNELL, Justice.

The Iowa Comprehensive Petroleum Underground Storage Tank Fund Board (Board) appeals from a district court ruling granting summary judgment to Federated Mutual Insurance Company (Federated) in the Board's declaratory judgment action. Federated cross appeals from the district court's denial of its motion to adjudicate law points. We affirm.

## I.  Background Facts and Proceedings

The Board filed a declaratory judgment action seeking to establish that it is entitled to receive insurance coverage for the costs of cleaning up petroleum-contaminated ground located at a Casey's General Store convenience store in Centerville, Iowa. The insurance policy at issue was purchased by CML Enterprises, the owner of the property. The commercial policy package offered by Federated included optional pollution liability coverage, which CML purchased for an additional $13,120 premium. The effective dates for the pollution liability coverage were March 5, 1990, through September 5, 1990. The policy insured against claims for "clean up costs" because of " 'environmental damage.' " The policy only applied to claims "caused by a pollution incident that commence[d] on or after the retroactive date" of March 5, 1990. Exclusion (a) excluded coverage for any " 'environmental damage' caused or contributed to by any 'pollution

incident' that commenced prior to the retroactive date."

CML purchased the property in question in 1978 and later installed two underground storage tanks. The manager of the Casey's store and CML's principal both stated that numerous incidents occurred between 1978 and 1990 which resulted in the spilling of petroleum on the property, including tanker overfills and "drive-offs." Contamination was first discovered at the site on June 28, 1990, by a geotechnical testing team. On July 7, 1990, a gasoline dispenser was hit by a car and released approximately five gallons of petroleum onto the property. In 1991, after the initial claim for coverage was filed by CML, a leak was found in an underground pipe nipple. CML filed a claim for benefits with Federated, which Federated denied on December 10, 1990, based on the language of exclusion (a). Federated maintained that the environmental damage for which CML sought coverage was "caused or contributed to" by a "pollution incident that occurred prior to the retroactive date" of the policy.

CML also forwarded a claim for remediation benefits to the Underground Storage Tank Financial Assistance Program. *See* Iowa Code ch. 455G (Supp.1989). The Board approved CML's claim and began paying for the cleanup. On January 6, 1996, Ron Larson, CML's principal, assigned CML's rights under the insurance policy to the Board. The Board then attempted to recoup its costs from Federated, which again denied coverage and claimed the assignment was invalid.

The Board then filed this declaratory judgment action seeking a determination of coverage. Federated filed a motion to adjudicate law points pursuant to Iowa Rule of Civil Procedure 105, arguing that: (1) the assignment entered into between CML and the Board was not valid because it lacked proper consideration; (2) the Board could not pursue recovery of its costs from Federated, who was not a potentially responsible party under the statutory language governing the Board's activities; and (3) the Board exceeded its statutory authority in requiring CML to transfer an asset (the insurance policy) to the Board. The district court denied the motion and Federated sought interlocutory appeal, which our court denied. Federated then moved for summary judgment, which the district court granted based on exclusion (a).

The Board appeals the district court's grant of summary judgment on the following grounds: (1) exclusion (a), which the district court found precluded coverage, is ambiguous when read with the rest of the policy and therefore should be construed in the light most favorable to the insured to provide coverage; (2) the reasonable expectations doctrine should apply and afford coverage despite the exclusion; and (3) Federated waived its right to assert and/or should be estopped from asserting that pollution existed on the site prior to the issuance of the policy because it failed to exercise its right under the terms of the policy to inspect the property before accepting the risk. Federated cross appeals on the ground that the district court should have granted its rule 105 motion.

## II. The Boards Appeal

### A. Standard of Review

Our review of a district court's grant or denial of summary judgment is for the correction of errors at law. *LeMars Mut. Ins. Co. v. Joffer,* 574 N.W.2d 303, 306 (Iowa 1998). The following delineates our standard of review:

> Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *C–Thru Container Corp. v. Midland Mfg. Co.,* 533 N.W.2d 542, 544 (Iowa 1995). In determining whether a genuine issue of fact exists, we consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

**550**

if any. Iowa R. Civ. P. 237(c). To decide if the moving party has met this burden, we review the record in the light most favorable to the nonmoving party.... *C–Thru Container,* 533 N.W.2d at 544.

*Id.*

### B. Analysis

### 1. Ambiguity

The issues on the Board's appeal require us to interpret and construe provisions of the pollution liability policy issued to CML by Federated. Our rules of contract interpretation peculiar to insurance policies apply. *See id.* (citing *Ferguson v. Allied Mut. Ins. Co.,* 512 N.W.2d 296, 298 (Iowa 1994)).

Interpretation and construction "are technically distinct exercises with regard to resolving insurance contract problems." Interpretation requires a court to determine the meaning of contractual words. This is a question of law for the court unless the meaning of the language depends on extrinsic evidence or a choice among reasonable inferences to be drawn. Construction of an insurance policy requires the court to determine its legal effect. The proper construction of an insurance contract is always an issue of law for the court.

The cardinal principle in the construction and interpretation of insurance policies is that the intent of the parties at the time the policy was sold must control. Except in cases of ambiguity, the intent of the parties is determined by the language of the policy. "An ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one." Because of the adhesive nature of insurance policies, their provisions are construed in the light most favorable to the insured. Exclusions from coverage are construed strictly against the insurer.

*Id.* at 306–07 (citations omitted) (quoting *Ferguson v. Allied Mut. Ins. Co.,* 512 N.W.2d 296, 299 (Iowa 1994) and *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.,* 475 N.W.2d 607, 618 (Iowa 1991)).

Turning now to the policy language at issue, we note that exclusion (a) excludes coverage for environmental damage "caused or contributed to" by any "pollution incident" that commenced prior to March 5, 1990. The Board contends that the district court's interpretation of the policy would prohibit coverage for any property on which there has been prior contamination. The Board maintains that the policy language is ambiguous and should therefore be construed in its favor. Federated relies on the plain language of the exclusion to bolster its contention that coverage is not provided in this instance. According to Federated, the environmental damage present at the site was "contributed to" by pollution incidents which occurred prior to March 5, 1990, and therefore the plain language of the exclusion prohibits coverage.

The evidence submitted with Federated's motion for summary judgment showed that some accidents occurred on the property prior to March 5, 1990, which could have caused contamination. The evidence also showed that the environmental damage could not be segregated based on different incidents, but had formed one large plume. Therefore, although some of the damage found at the site may have commenced during the policy period, the evidence showed that damage was contributed to by pollution incidents which occurred before that time, making the exclusion applicable. The Board concedes in its brief that there were pollution incidents at the site prior to the retroactive date that contributed to the environmental damage that forms the basis for its claim. However, it still maintains that because the policy language is ambiguous, the exclusion should not apply.

The Board claims that Federated's interpretation of exclusion (a) eliminates cov-

erage whenever any prior pollution incident has occurred on the property. This is not an accurate conclusion, however, because coverage would be provided even in the face of prior pollution incidents if those prior incidents did not contribute to the environmental damage for which coverage is being sought. In this case, both sides' experts concluded that the prior incidents contributed to the damage discovered in 1990; therefore, under the plain language of the exclusion, no coverage is available. We do not find upon an objective examination that the language of the exclusion is "fairly susceptible to two interpretations" and therefore no ambiguity exists which would necessitate adopting an interpretation favoring the insured. *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991).

We agree with the conclusion of the district court that the language of exclusion (a) is not ambiguous and therefore should be applied as the plain language of the exclusion dictates. Such an application leads to no coverage for the incident in question, as the evidence established that pollution incidents which occurred prior to the retroactive date contributed to the environmental damage for which CML and the Board sought coverage.

## 2. Reasonable Expectations Doctrine

■ The Board alternatively argues that the application of exclusion (a) is contrary to CML's reasonable expectations of coverage. We have previously explained that an insured can utilize the doctrine of reasonable expectations to avoid an exclusion that "(1) is bizarre or oppressive, (2) eviscerates a term to which the parties have explicitly agreed, or (3) eliminates the dominant purpose of the policy." *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 356 (Iowa 1995) (citing *Clark–Peterson Co. v. Independent Ins. Assocs., Ltd.*, 492 N.W.2d 675, 677 (Iowa 1992)). However, as a prerequisite to the applicability of this doctrine, the insured must show "circumstances attributable to the

insurer that fostered coverage expectations" or that "the policy is such that an ordinary layperson would misunderstand its coverage." *Id.* at 357.

■ We find that the Board has failed to establish one of the prerequisites necessary for the applicability of this doctrine. First, there are no circumstances attributable to Federated that fostered coverage expectations. The Board does not assert, and we find no record of, any representations by Federated that would have led CML to believe coverage would be available under the scenario presented in the case at bar. The Board maintains that its payment of the $13,120 premium is indicative of CML's reasonable belief that the environmental damage at issue would be covered. We do not believe, however, that the simple act of paying the premium requested by an insurance company is sufficient to establish "circumstances attributable to the insurer that fostered coverage expectations." *Id.* Second, the language of the exclusion is not "such that an ordinary layperson would misunderstand its coverage." *Id.* The exclusion is succinct and clearly written and simple enough for a layperson to comprehend. We agree with the statement of the district court that "[a]s insurance policies go, Federated's policy language ... is quite clear."

## 3. Waiver and Estoppel

The Board's waiver and estoppel arguments are based on a policy provision which provides Federated with the opportunity to inspect the site before issuing the policy. The provision states that Federated "ha[s] the right but [is] not obligated to ... [m]ake inspections and surveys at any time." The Board contends that because Federated did not conduct any inspection prior to issuing the policy, it is precluded from now using exclusion (a) to avoid coverage of the Board's claim. Federated contends that its failure to inspect the property only waives its right to inspection before issuance of the policy, not its right to assert applicable exclusions.

**552**

### a. Waiver

 Waiver is defined as "the voluntary or intentional relinquishment of a known right." *Scheetz v. IMT Ins. Co. (Mut.)*, 324 N.W.2d 302, 304 (Iowa 1982) (quoting *Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982)). "The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such right." *Id.* Waiver can be express, "shown by the affirmative acts of a party," or implied, "inferred from conduct that supports the conclusion waiver was intended." *Id.* Generally, the issue of waiver is one for the jury; when the evidence is undisputed, however, the issue is one of law for the court. *Id.*

Although it does appear that Federated waived its right to conduct an inspection prior to accepting the risk of insuring the property at issue, this waiver only prohibited Federated from later demanding an inspection before paying benefits. This limited waiver does not prohibit Federated from asserting exclusion (a), which is not associated with the right of inspection.

### b. Estoppel

We have previously defined estoppel as follows:

> "An estoppel is based upon the idea that one who has made a certain representation or taken a certain position, should not thereafter be permitted to change his position to the prejudice of one who has relied thereon."

*Laverty v. Hawkeye Sec. Ins. Co.*, 258 Iowa 717, 726, 140 N.W.2d 83, 88 (1966) (quoting *Seymour v. City of Ames*, 218 Iowa 615, 619, 255 N.W. 874, 876 (1934)). Therefore, to establish estoppel, a party must show a promise, reliance upon that promise, and circumstances which make it unjust not to enforce the promise. The Board contends that the promise in this instance is the issuance of the pollution liability coverage. According to the Board, it relied upon the issuance of the policy as a promise that coverage would be available and therefore, Federated should be estopped from denying coverage. We find fault with the Board's position, however, because Federated never promised that coverage would be available under all circumstances. The policy clearly set forth exclusions which could apply to any claims for coverage. Thus, we find the Board has no valid estoppel claim.

Because we find the district court properly granted Federated's motion for summary judgment, we need not address Federated's cross appeal from the denial of its motion to adjudicate law points.

**AFFIRMED.**