# IN THE SUPREME COURT OF IOWA

No. 20–0698

Submitted April 14, 2021—Filed June 11, 2021

**EMC INSURANCE GROUP, INC.,**

Appellee,

vs.

**GREGORY M. SHEPARD,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

Investor appeals summary judgment determining he failed to validly exercise right to appraisal following merger. **AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Thomas K. Cauley, Jr. (argued), Sidley Austin LLP, Chicago, Illinois, and Steve Eckley of Eckley Law PLLC, Des Moines, for appellant.

Beth I.Z. Boland (argued), Eric G. Pearson, and Joseph S. Harper of Foley & Lardner, LLP, Boston, Massachusetts, and Michael W. Thrall, Mark C. Dickinson, and Lynn C. Herndon of Nyemaster Goode, P.C., Des Moines, and for appellee.

Stephen E. Doohen of Whitfield & Eddy, P.L.C., Des Moines, and Gregg M. Mashberg, Margaret A. Dale, and Brian A. Hooven of Proskauer Rose LLP, New York, New York, for amicus curiae The Depository Trust Company.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court correctly entered summary judgment against an investor on grounds he failed to exercise his appraisal rights in a merger. The controlling statute, Iowa Code section 490.1303(2)(*a*) (2019), requires a beneficial shareholder to submit the written consent of "the record shareholder" to demand appraisal. The investor, the beneficial owner of 1.1 million shares, received $36 per share ($39.6 million) when the merger transaction closed. He objected to the merger and, through his attorney and broker, sought to exercise his appraisal rights but never obtained the written consent of Cede & Co. (Cede), shown on the corporation's records as the record shareholder. Another dissenting investor successfully exercised his appraisal rights by obtaining the timely consent of Cede. The corporation filed this declaratory judgment action and moved for summary judgment, which the district court granted. The investor appealed and we retained the case.

On our review, we determine that Cede was the sole record shareholder as a matter of law for the disputed shares. The investor, lacking Cede's consent, failed to validly exercise his appraisal rights that have been extinguished. His waiver and estoppel arguments fail. For the reasons explained below, we affirm the district court's summary judgment against the investor.

## I. Background Facts and Proceedings.

The material facts in this case are undisputed. Employers Mutual Casualty Company (EMCC) was the majority owner of EMC Insurance Group, Inc. (EMCI). Gregory Shepard was the beneficial owner of 1.1 million shares of EMCI stock. Shepard held these shares in two brokerage accounts at Morgan Stanley Smith Barney LLC (Morgan

Stanley), a Depository Trust Company (DTC) participant.[1]  As the DTC explained in its amicus curiae brief in this appeal, participants

> deposit securities into their DTC accounts for "book-entry" services; i.e., transfer of beneficial ownership interests by means of automated credits and debits to securities accounts, rather than actual transfer of record ownership.  Securities deposited at DTC for book-entry services are registered on the books and records of the issuer in the name of DTC's nominee, Cede & Co., which becomes the record (legal) owner of the shares.

This case arises from the merger of EMCC and EMCI.  Before the special meeting for this proposed merger, EMCI's transfer agent, AST, sent EMCI a list of record shareholders as of August 8, 2019 (the record date), eligible to vote at the special meeting (the Record Shareholder Voting List). AST was in charge of maintaining EMCI's records of its registered shareholders.  This list indicated that Cede held 9,432,555 shares as of the record date for the special meeting.  AST also sent EMCI a spreadsheet on the day of the special meeting and included the registered shareholders of the company (the Record Shareholder Payment List).  Neither Morgan

---

[1]DTC exists to obviate the need for cumbersome transfers of physical stock certificates.  In the 1970s,

> [t]ransfer of securities in the traditional certificate-based system was a complicated, labor-intensive process.  Each time securities were traded, the physical certificates had to be delivered from the seller to the buyer, and in the case of registered securities the certificates had to be surrendered to the issuer or its transfer agent for registration of transfer.

Unif. Com. Code art. 8 Prefatory Note (1994), 2C U.L.A. 431 (2005).  "As is well known, the mechanical problems of processing the paperwork for securities transfers reached crisis proportions in the late 1960s . . . ."  *Id.*  As a result, the Securities and Exchange Commission "adopted a national policy of share immobilization" and "placed a new entity—the depository institution—at the bottom [of] the ownership chain."  *See In re Appraisal of Dell Inc.*, Consol. C.A. No. 9322–VCL, 2015 WL 4313206, at *1 (Del. Ch. July 13, 2015).  "DTC emerged as the only domestic depository," with "[o]ver 800 custodial banks and brokers [as] participating members . . . ."  *Id.*  Under this system, "all of the shares are issued in the name of Cede"—DTC's nominee, short for "Central Depository."  *Id.*  Beneficial ownership interests in the shares may trade numerous times among various beneficial owners, while "legal title remains with Cede."  *Id.* at *1–2.

Stanley nor Shepard appeared as registered shareholders on either of these lists.

On August 8, EMCI mailed to the company's shareholders and filed with the Securities and Exchange Commission the "EMC Insurance Group Inc. Definitive Proxy Statement on Schedule 14A," (Proxy Statement), which provided:

> Beneficial owners of shares of common stock held of record in the name of another person, such as a bank, broker or other nominee, may assert appraisal rights only if the shareholder submits to the Company the record holder's written consent to the assertion of such rights . . . .

The Proxy Statement told shareholders that all shares of common stock would "automatically be cancelled and cease to exist, except for the right to receive the merger consideration" at the time of the merger. In order to avoid this outcome, shareholders were required to "demand[] and perfect[] their right to appraisal of their *shares in accordance with Division XIII of the Iowa Business Corporation Act.*" (Emphasis added.) The statement included the following admonition:

> The Company urges you to read the entire proxy statement, including the annexes and the documents referred to or incorporated by reference in the proxy statement, carefully, as it sets forth the details of the merger agreement and other important information related to the merger.

Under "Dissenters' Rights to Appraisal," the company repeated:

> You are encouraged to read Division XIII of the Iowa Business Corporation Act carefully and in its entirety. Moreover, due to the complexity of the procedures for exercising the right to seek appraisal, shareholders who are considering exercising such rights are encouraged to seek the advice of legal counsel. Failure to comply with these provisions may result in loss of the right of appraisal. Any holder of common stock who loses his, her or its appraisal rights will be entitled to receive the merger consideration of $36.00 per share in cash if such

person is a shareholder of the Company as of the effective time of the merger.[2]

On September 10, EMCI received a letter from Cede submitted on behalf of one of EMCI's beneficial shareholders (the other dissenter), who had also obtained certificates for its shares and deposited them with EMCI. That letter stated that Cede was the nominee of DTC, "a holder of record of shares [of EMCI]," and that, "[i]n accordance with instructions received from Participant on behalf of Beneficial Owner, we hereby assert appraisal (or dissenters') rights with respect to the Shares." The Record Shareholder Payment List had the shares of the other dissenter recorded with the notation "CEDE & CO FBO DISSENTER."

On September 12, EMCI obtained an Omnibus Proxy and Security Position Report (SPR or Cede Breakdown) from DTC. The Omnibus Proxy is the means by which DTC, "the holder of record for depository-eligible securities, transfers the right to vote with respect to those securities to the DTC participants that hold record date positions." *Proxy Services*, DTCC, (emphasis added) https://www.dtcc.com/settlement-and-asset-services/issuer-services/proxy-services [https://perma.cc/D32H-JMZS]. The Cede Breakdown includes detailed share and contact information for each participant. *Id.* The September 12 Omnibus Proxy provided that Cede appointed the person or entity named in the attached Cede Breakdown to vote the shares opposite its name. The September 12 Cede Breakdown identified Morgan Stanley as a participant with respect to 1,123,502

---

[2]The DTC website describes this process: "DTC also assists Participants in exercising other rights in connection *with its role as the record holder* of securities on deposit." *Proxy Services*, DTCC, (emphasis added), https://www.dtcc.com/settlement-and-asset-services/issuer-services/proxy-services [https://perma.cc/D32H-JMZS]. "In order to exercise [appraisal] rights through DTC, the participant must complete and submit to DTC a letter identifying the issue and the quantity of securities involved, along with the instruction letter instructing DTC to act." *Id.*

shares of DTC's total position in EMCI. Shepard's name was not on the Cede Breakdown.

On September 16, Thomas Cauley, Shepard's attorney, sent EMCI notice of Shepard's "intent to demand payment pursuant to Iowa law" and attached Shepard's vote against the merger. The next day, Cauley sent another letter to EMCI that enclosed a September 17 letter from Shepard's broker, Morgan Stanley (the Morgan Stanley Letter). Cauley indicated the enclosed letter confirmed Shepard was authorized to exercise appraisal rights with respect to the 1.1 million shares of EMCI common stock that he owned. The Morgan Stanley Letter stated that Shepard maintained two brokerage accounts at Morgan Stanley. It stated his shares held in these accounts were "held in street name and Morgan Stanley's records reflect that the Client is the owner of record of the shares held in each account." The letter also stated that

> [t]he control agreement between Morgan Stanley, [Heartland Bank and Trust Company (HBTC)] and the Client does not restrict the Client's ability to exercise his voting and appraisal rights with respect to the shares of EMCI, however, Morgan Stanley makes no representation regarding any other agreements that may exist between HBTC and the Client.

After receiving these letters, Todd Strother—the Senior Vice President, Chief Legal Officer, and Secretary of EMCI—spoke by phone with a representative of AST, who confirmed EMCC, through AST, was to pay Cede for the 9,270,528 shares beneficially owned through it, including Shepard's shares (the DTC Payment). Cede would then distribute the DTC Payment to its participants, who in turn would distribute the funds to the ultimate beneficial holders of EMCI's common stock. AST confirmed Shepard had not requested his shares be removed from Cede's record ownership and that Cede would not make the distribution payment to *any*

of the beneficial shareholders unless and until it received $36 per share for all of its shares reflected on the Record Shareholder Payment List.

On September 18, EMCI shareholders met and voted to approve the merger. Effective September 19, EMCC purchased the remaining outstanding shares of EMCI for $36 a share. The Agreement and Plan of Merger (Merger Agreement) controlled the terms of the merger and required that all shares of EMCI be converted into the right to receive $36 in cash, without interest (the Merger Consideration). The only shares exempted from this payout were those held by shareholders who demanded and perfected their appraisal rights and those held by EMCC and certain EMCI-affiliated entities. Section 1.6 of the Merger Agreement stated:

> [A]ll Company Dissenting Shares held by shareholders who shall have failed to perfect or . . . lost their rights to appraisal . . . under Iowa Law shall thereupon be deemed to have been converted into, and to have become exchangeable for, as of the Effective Time, the right to receive the Merger Consideration, without any interest thereon . . . [and] shall cease to be Company Dissenting Shares hereunder.

Section 1.13 notified shareholders that book-entry shares would be cancelled after the holder received Merger Consideration. On September 20, EMCC paid the Merger Consideration to the registered shareholders of EMCI's common stock. EMCI relied on the Record Shareholder Payment List to determine the shareholders that were to receive the $36 per share Merger Consideration. On September 23, Shepard received $36 for each of his 1.1 million shares. At the time of this merger, Shepard was the largest single minority shareholder of EMCI. That same day, Cauley sent a letter to EMCI outside counsel, Michael Thrall, about this payment. Cauley wrote, "[W]e assume [the payment] reflects EMCI's estimate of the 'fair value' of EMCI's shares and was paid

pursuant to Sections 490.1322 and 490.1324" and "[p]lease let us know when we can expect to receive th[e] appraisal notice."

On September 26, EMCI sent Shepard a letter entitled "Appraisal Rights Notice" that included an "Appraisal Rights Form." The letter acknowledged receiving Cauley's September 16 letter, "indicating Mr. Shepard's intent to seek appraisal rights" and notified Shepard that the merger was complete. The letter told Shepard he was required to submit the appraisal rights form but did not comment on whether it had received Cede's consent. The letter stated in part,

> Please be advised as follows:
>
> 1. To formally assert appraisal rights with respect to the Appraisal Shares, Mr. Shepard must proceed as follows:
>
> - Complete, date and sign the Appraisal Rights Form included with this Notice to make the certifications required by Section 490.1322(2)(a) of the Iowa Act with respect to the Appraisal Shares.
>
> - Return the completed Appraisal Rights Form to the Company at the address below such that the Company receives the Appraisal Rights Form by no later than November 5, 2019 (the "Response Deadline").
>
> . . . .
>
> 2. Failure to return the Appraisal Rights Form by the Response Deadline will result in a waiver and loss of Mr. Shepard's right to demand appraisal of the fair value of the Appraisal Shares under the Iowa Act.

The letter told Shepard that it was being sent "pursuant to the requirements of Section 490.1322 of the Iowa Business Corporation Act [(IBCA)]" and attached a copy of Division XIII of the IBCA, which describes the statutory requirements for a beneficial shareholder exercising appraisal rights, including submitting the record shareholder's written consent as stated in section 490.1303(2)(*a*).

The next day and in response to this notice, Cauley sent another letter to Thrall indicating that "[w]e assume that EMCI does not intend to pay Mr. Shepard a second time" and alleging that "EMCI clearly has not followed the appraisal process set forth in the Iowa Business Corporations Act." Cauley wrote that *if* Shepard decided to return the appraisal rights form, he would do so by November 5 and would also provide EMCI with his estimate of EMCI's fair value; Cauley noted Shepard did not agree that the $36 per share was the fair value of EMCI's stock at the time the merger became effective. Finally, Cauley wrote that Shepard had no obligation to provide a fair value estimate within thirty days of September 23 because EMCI did not comply with the IBCA timetable. Thrall did not respond to Cauley's letters of September 23 or 27. Shepard returned the completed Appraisal Rights Form on November 4, enclosed in a letter from Cauley, without Cede's written consent for Shepard's assertion of his appraisal rights.

On November 12, EMCI filed this declaratory judgment action seeking a determination that Shepard had failed to meet the statutory requirements to exercise his appraisal rights under the IBCA, Iowa Code chapter 490, division XIII, and that he did not retain any legal interest in the shares he beneficially owned prior to the merger. EMCI also requested the court "enjoin[] Shepard from pursuing such rights" if the court did not decide the declaratory judgment request by November 25. That same day EMCI requested expedited relief and a stay. On November 18, the court entered the parties' stipulated order staying the statutory appraisal process and establishing a briefing schedule.

Shepard filed a motion to dismiss, and EMCI responded with a motion for summary judgment. The district court proceeded without an evidentiary hearing, pursuant to the parties' agreement that the written

submissions provided the necessary facts. On April 5, 2020, the district court filed a thorough, fifty-nine-page ruling that denied Shepard's motion and granted EMCI's motion for summary judgment. The district court determined that Shepard had failed to obtain written consent from the record shareholder, Cede, prior to November 5, 2019, and had thus failed to comply with Iowa Code section 490.1303(2)(*a*). The district court rejected Shepard's waiver and equitable estoppel claims.

## II.  Standard of Review.

We review rulings on statutory interpretation for correction of errors at law. *Doe v. State*, 943 N.W.2d 608, 609 (Iowa 2020).

"We 'review a district court ruling on a motion for summary judgment for correction of errors at law.' " *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 882 (Iowa 2020) (quoting *Wells Fargo Equip. Fin., Inc. v. Retterath*, 928 N.W.2d 1, 5 (Iowa 2019)). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 141 (Iowa 2018)). "Summary judgment is appropriate 'if the record reveals only a conflict concerning the legal consequences of undisputed facts.' " *Id.* (quoting *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015)). "We review evidence in the light most favorable to the nonmoving party." *Id.*

## III.  Analysis.

We first address whether the district court erred by ruling that Cede was the sole record shareholder of the shares beneficially owned by Shepard such that his right to an appraisal failed without Cede's written consent. Then we determine whether the district court erred by rejecting Shepard's waiver and equitable estoppel claims. The parties agree there

are no genuine issues of material fact precluding summary judgment but disagree on the legal significance of the undisputed facts.

**A. Shepard's Right to Appraisal Required the Written Consent of Cede as the Record Shareholder.** Under the controlling provision of the IBCA, in order to assert appraisal rights, a beneficial owner of shares must submit "*the* record shareholder's written consent." Iowa Code § 490.1303(2)(*a*) (emphasis added). Shepard argues his broker, Morgan Stanley, was the record shareholder. EMCI argues that the record shareholder was Cede and because Shepard did not submit Cede's consent, Shepard failed to exercise his appraisal rights. We must identify the "record shareholder" whose consent to appraisal is required.

We begin with the statutory text. *Doe*, 943 N.W.2d at 610 ("Any interpretive inquiry thus begins with the language of the statute at issue."). Iowa Code chapter 490 is commonly referred to as the "IBCA." *See* 5 Matthew G. Doré, *Iowa Practice Series*, *Business Organizations* § 1:2(2)(a), at 4 (2020–2021 ed. 2020) [hereinafter Doré]. The IBCA "is Iowa's principal general corporation law[,] . . . a modern, consistent, and coherent statute modeled on the ABA's Model Business Corporation Act (1984)." *Id.* Division XIII of the IBCA governs appraisal rights. The legislature defined "record shareholder" as "*the* person in whose name shares are registered in the records of the corporation." Iowa Code § 490.1301(8) (emphasis added). The statute's use of the definite article "the" is a word of limitation, a singular term meaning a specific person. *See Doe*, 943 N.W.2d at 611. The IBCA, by its terms, confirms there is only one record shareholder; it refers to a singular "person." *See* Iowa Code § 490.1301(8).[3]

---

[3]This definition has remained essentially unchanged since its adoption. *Compare* Iowa Code § 490.1301(8) (2019), *with* 1989 Iowa Acts ch. 288, § 131(5) (codified at

We also consider the broader context in which the statutory term is used. *See Doe*, 943 N.W.2d at 610. Defining the record shareholder in the singular—as but one person or entity—makes sense to avoid inconsistent votes being cast for the same share. Article 8 of the Iowa Uniform Commercial Code makes the right to vote exclusive to a single owner of the shares:

> Before due presentment for registration of transfer of a certificated security in registered form, or of an instruction requesting registration of transfer of an uncertificated security, the issuer or indenture trustee may treat the registered owner as the person *exclusively* entitled to vote, receive notifications, and otherwise exercise all the rights and powers of an owner.

Iowa Code § 554.8207(1) (emphasis added). The registered owner's exclusive right to vote shares aligns with the appraisal rights statute's definition of the record shareholder. *See id.* §§ 490.1301(8), .1303(2)(*a*). Morgan Stanley and Cede cannot both be record shareholders of the same shares under Iowa law. We hold that under section 490.1303(2)(*a*), there is only one record shareholder whose consent is required for an appraisal of the shares.

To identify the record shareholder in this case, we look to the records of the corporation. *See id.* §§ 490.1301(8), .1601(3) ("A corporation or its agent shall maintain a record of its shareholders . . . ."). Shepard argues that the pertinent record is the Cede Breakdown and that because Morgan Stanley was shown as a participant on that list, Shepard properly asserted his appraisal rights through his broker. We disagree. The DTC website describes the relationship between Morgan Stanley and Cede as follows:

> When an investor holds shares [in street name], the investor's name is listed on its brokerage firm's books as the

---

Iowa Code § 490.1301(5) (Supp. 1989)) (defining "record shareholder" as "the person in whose name shares are registered in the records of a corporation").

beneficial owner of the shares. The brokerage firm's name is listed in DTC's ownership records. DTC's nominee name (Cede & Co.) is listed as the registered owner on the records of the issuer maintained by its transfer agent. DTC holds legal title to the securities and the ultimate investor is the beneficial owner.

*FAQS: How Issuers Work with DTC*, DTCC, https://www.dtcc.com/settlement-and-asset-services/issuer-services/how-issuers-work-with-dtc#:~:targetText=DTC%20holds%20legal%20title%20to,investor%20is%20the%20beneficial%20owner.&targetText=If%20an%20investor%20purchases%20securities,direct%20registration%20system%20(DRS) [https://perma.cc/PTD2-NKTZ]. The district court correctly relied on the Record Shareholder Voting List provided by AST, on which Cede was listed as the registered owner, not Shepard or Morgan Stanley.[4]

The Cede Breakdown is a list used, as DTC explained in its amicus brief, "to provide the issuers [EMCI] with information necessary to process certain transactions, including those governed by the federal securities laws." *See, e.g.*, 17 C.F.R. § 240.14c–7 (2019). As DTC further explained:

> [T]he SPR is merely a mechanism to allow the issuer to identify the beneficial owners; *i.e.*, DTC Participants having positions in their issue. . . . It is not a "competing" list of record owners that supplements or conflicts with the issuer's list of registered shareholders required by Iowa Code Ann. § 490.1601(3).

---

[4]Iowa's statute distinguishes between "beneficial" and "record" shareholders. As the district court noted, so does Oregon's statute. *Compare* Or. Rev. Stat. Ann. §§ 60.551, .557 (West, Westlaw through 2020 Reg. Sess. 80th Legis. Assemb.), *with* Iowa Code §§ 490.1301, .1303. A federal district court has relied on this distinction to reject a beneficial shareholder's argument that the proxy statement was "misleading," and the court held that the plaintiff failed to comply with the statutory requirements, including submitting the written consent of the record shareholder. *Nelson v. R-B Rubber Prods., Inc.*, No. Civ. 03–656–HA, 2005 WL 1334538, at *5 (D. Or. June 3, 2005). By contrast, other jurisdictions do not make the same distinction. *See, e.g.*, Mass. Gen. Laws Ann. ch. 156B, § 86 (West, Westlaw through ch. 8 2021 1st Ann. Sess.); N.Y. Bus. Corp. Law § 623 (McKinney, Westlaw through L.2021) (mentioning beneficial shareholders but not requiring written consent of record shareholder to exercise dissenter's rights).

The Cede Breakdown notifies issuers which banks and brokers hold shares *through* DTC. *See In re Appraisal of Dell Inc.*, Consol. C.A. No. 9322–VCL, 2015 WL 4313206, at *6 (Del. Ch. July 13, 2015). It does not transfer legal title nor does it alter the statutory obligation on Shepard's part to obtain Cede's consent to exercise appraisal rights. Iowa Code section 490.1601(3) requires Iowa corporations to

> maintain a record of its shareholders in a form that permits preparation of a list of the names and addresses of all shareholders in alphabetical order by class of shares showing the number and class of shares held by each.

This requirement makes sense in light of the definition of "record shareholder." *See* Iowa Code § 490.1301(8) (defining "record shareholder" as "the person in whose name shares are registered *in the records of the corporation*") (emphasis added)).

EMCI had such a list that met the requirements of section 490.1601(3): the Record Shareholder Voting List. This list was prepared by EMCI's agent (AST) but still qualifies as a corporate record. *See In re Appraisal of Dell Inc.*, 2015 WL 4313206, at *9 ("Virtually all public corporations have outsourced the maintaining of the stock ledger to a transfer agent . . . . The stock ledger and the stock list as of a particular record date are corporate records, but they exist and are maintained outside the corporation."). EMCI was entitled to "rely on its records until a stockholder t[ook] proper steps to transfer title to the shares." *Id.* at *8.[5] Cede was listed as the record shareholder on this list. Cede's consent was required for Shepard to exercise his appraisal rights. *See id.* at *9 ("Under

---

[5]Shepard argues that *In re Appraisal of Dell Inc.* stands for the proposition that "[a]n issuer cannot rely on the stock ledger maintained by its transfer agent, pretend that Cede is a single record holder, and ignore the Cede breakdown." *See* 2015 WL 4313206, at *11. However, this discussion was offered as a "possible interpretation" and is not binding precedent here. *Id.*

existing precedent, Cede was the stockholder of record for purposes of the [beneficial shareholders'] shares and therefore made the appraisal demand.").[6]  EMCI was not required to look outside of this list to search for other potential record shareholders.  Iowa Code section 490.1303(2)(*a*) only provides for one record shareholder, which the district court correctly ruled was Cede.[7]

"In making th[e] choice [to hold shares in street name], the burden must be upon the stockholder to obtain the advantages of record ownership."  *See Enstar Corp. v. Senouf*, 535 A.2d 1351, 1354 (Del. 1987); *cf. Allison v. Preston*, 651 A.2d 772, 775–76 (Del. Ch. 1994) (distinguishing *Enstar* because the beneficial shareholders in *Allison* were forbidden "from holding their shares in their own name"), *aff'd sub nom. Preston v. Allison*, 650 A.2d 646 (Del. 1994).  The other dissenter effectively exercised appraisal rights by following the statutory requirement to submit Cede's

---

[6]*See also Nelson*, 2005 WL 1334538, at *5; *Kaiser Steel Res., Inc. v. Jacobs (In re Kaiser Steel Corp.)*, 110 B.R. 514, 521–23 (D. Colo. 1990) ("[T]he bankruptcy court incorrectly assumed that Kaiser's records would indicate that Schwab[, the broker,] was the record owner of Kaiser stock.  . . . Kaiser stock held by Schwab's customers in street name was actually registered in the name of DTC's nominee, Cede & Co.  Consequently, if anything, Kaiser's records would indicate that it was dealing with Cede & Co., not Schwab."), *aff'd sub nom. Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846 (10th Cir. 1990); *Enstar Corp. v. Senouf*, 535 A.2d 1351, 1356 (Del. 1987) (referencing prior Delaware cases and agreeing that "demands for appraisals made by the beneficial owners of stock, rather than the stockholders of record, [are] invalid[], even though the identity of the holder of record [i]s known"); *Harkins v. Sun Pharm. Indus., Inc.*, No. 344505, 2019 WL 6977838, at *3 (Mich. Ct. App. Dec. 19, 2019) (per curiam) (holding that because the beneficial shareholders did not submit Cede's written consent, they failed to assert dissenters' rights), *appeal denied*, 957 N.W.2d 819 (Mich. 2021) (mem.); *Kohler Co. v. Sogen Int'l Fund, Inc.*, No. 99–2115, 2000 WL 1124233, at *2 (Wis. Ct. App. Aug. 9, 2000) (per curiam) (agreeing with the Delaware court in *Enstar* and holding that the corporation could rely solely on the actions of Cede and that the beneficial shareholders failed to exercise dissenters' rights).

[7]This is not to say that a broker could never be a record shareholder.  *See, e.g.*, *Nelson*, 2005 WL 1334538, at *3 (holding plaintiffs were beneficial shareholders because they had "transferred record ownership" to their broker).  However, here, Morgan Stanley was not the record shareholder because Shepard had not transferred record ownership to it.

written consent, and Shepard was required to do so as well. *Cf. Enstar,* 535 A.2d at 1354 ("The legal and practical effects of having one's stock registered in street name cannot be visited upon the issuer. The attendant risks are those of the stockholder, and where appropriate, the broker."). Nor did the Omnibus Proxy submitted with the Cede Breakdown change the record shareholder; it simply notified EMCI that Cede had transferred its right to vote on the merger to Morgan Stanley. *See In re Appraisal of Dell Inc.*, 143 A.3d 20, 28–29 (Del. Ch. 2016) (describing how Cede remains the record shareholder when it transfers its right to vote via an omnibus proxy to a participant). *Compare* Iowa Code § 490.722 (discussing appointment of proxies), *with id.* § 490.1303 (describing how shareholders may assert appraisal rights).

We hold that for purposes of exercising appraisal rights, the record shareholder is the shareholder listed on the record maintained under section 490.1601(3) and not the Cede Breakdown provided by DTC. *See Graeser v. Phoenix Fin. Co. of Des Moines*, 218 Iowa 1112, 1118–19, 254 N.W. 859, 862 (1934) (holding that "until [an equitable shareholder] has caused a transfer to be made upon the books of the corporation, his title, as between the corporation and himself, is not perfected, and he neither has the rights nor is subject to the liabilities of membership" (quoting *Brown v. Duluth, M. & N. Ry.*, 53 F. 889, 894 (D. Minn. 1893))). Our holding comports with the Model Business Corporation Act (Model Act), upon which the IBCA is based. *See* Doré, § 1:2(2)(a), at 4.[8] The Model Act draws clear distinctions between the record shareholder, the broker, and the customer. *See* 1 Model Bus. Corp. Act Ann. § 7.23 cmt., at 145 (Am. Bar Ass'n 2008) ("[I]t has become a common practice for persons

---

[8]"Approximately 30 states have based their own corporate statutes on the MBCA . . . ." *See* Doré, § 17.3, at 555 n.9.

purchasing shares to have them registered in the 'street name' of a broker-dealer or other financial institution, principally to facilitate transfer by eliminating the need for the beneficial owner's signature and delivery. . . . In th[e depository system], financial institutions deposit securities with the depository, which becomes the registered owner of the shares.").

We decline Shepard's invitation to adopt the federal securities law definition of "record holder"; such a change in the legislative definition must come from the legislature.[9] *See Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377, 398 (Del. 2010) (en banc) (emphasizing the "comprehensive and carefully crafted statutory scheme" of the Delaware General Corporation Law and noting that "[a]ny adjustment to the intricate scheme . . . should be accomplished by the General Assembly through a coordinated amendment process"). We are not free to rewrite the statute. We affirm the district court's ruling that Cede was the record shareholder whose consent was required for Shepard to exercise his appraisal rights. Lacking Cede's consent, Shepard lost his right to an appraisal.

**B. Shepard's Waiver and Estoppel Claims Fail.** Shepard argues that EMCI waived his failure to obtain Cede's consent and is estopped from raising his omission because EMCI prematurely cancelled his shares and that EMCI "made a number of false and misleading representations to Shepard during the parties' correspondence." The district court correctly rejected Shepard's waiver and estoppel arguments.

1. *Waiver.* "Waiver applies when a party voluntarily relinquishes a known right." *DuTrac Cmty. Credit Union v. Hefel*, 893 N.W.2d 282, 292

---

[9]As the district court noted, "[A]t least the Delaware and Iowa legislatures have not seen fit to amend their statutes to incorporate the federal securities law definition of record holder urged by Shepard." It "assume[d] this [wa]s true for the other states since Shepard cited to no state laws that incorporate the federal securities law definition of record holder into their definition of record shareholder."

(Iowa 2017). "The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such a right." *Id.* (quoting *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins.*, 596 N.W.2d 546, 552 (Iowa 1999)). "Waiver can be either express or implied." *Id.* "Generally, the issue of waiver is one for the jury; when the evidence is undisputed, however, the issue is one of law for the court." *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 596 N.W.2d at 552. EMCI and Shepard agree the material facts are undisputed but disagree over the legal consequences of those facts.

First, the district court correctly rejected Shepard's claim that EMCI waived strict compliance with the appraisal requirements by cancelling Shepard's shares and paying him when the merger closed in September, well before the November 5 appraisal deadline. EMCI did exactly what the Proxy Statement told Shepard would happen: Pursuant to the terms of the Merger Agreement, his shares were cancelled when the merger closed. EMCI's September share cancellation and payment did not violate Iowa's appraisal statute that sets the date "by or before" payment must be made (December 5 in this case), not a date "on or after" payment is to occur. *See* Iowa Code § 490.1324(1) (requiring the corporation to pay the shareholder "*within* thirty days" of the appraisal deadline (emphasis added)). In any event, at no time before the November 5 appraisal deadline did Shepard seek Cede's consent or attempt to retrieve his cancelled shares. Without Cede's consent, his appraisal rights were never perfected. EMCI, by acting pursuant to the Merger Agreement, cannot be deemed to have waived strict compliance with appraisal requirements. If the sequence of deadlines left a trap for the unwary, Shepard has himself to blame. *See Enstar*, 535 A.2d at 1354 ("The legal and practical effects of having one's stock registered in

street name cannot be visited upon the issuer. The attendant risks are those of the stockholder, and where appropriate, the broker.")

Second, the parties' correspondence show no waiver by EMCI of strict compliance with the appraisal statute. EMCI was required by Iowa Code section 490.1322(1) to "send a written appraisal notice and [appraisal form], to all shareholders who satisfied the requirements of section 490.1321." EMCI did so. Shepard argues EMCI waived its right to strict compliance with the Iowa appraisal statute because in sending him its September 26 "Appraisal Rights Notice,"

> EMCI affirmatively represented to Shepard . . . that the *only* step left for Shepard to "formally assert appraisal rights" was to "complete, date and sign" the attached appraisal form and return that form to EMCI by November 5, which Shepard did.

We disagree. EMCI's letter, as required by section 490.1322(2), listed several steps Shepard was required to take to assert his appraisal rights, but the word "*only*" is Shepard's gloss and does not appear in that letter. The body of the letter is silent about the separate requirement to provide the written consent of the record shareholder, Cede. In that regard, the letter could have been clearer. Yet EMCI's letter, as required by section 490.1322(2)(*c*), also attached a copy of the IBCA division including section 490.1303(2)(*a*), which expressly sets forth that consent requirement. The letter nowhere stated the record shareholder's consent to appraisal was *not* required. Shepard, an investor holding a $39.6 million stock position and represented by counsel, remained on notice that Cede's written consent was still required. As the district court concluded, "There is nothing in the language of the letter that suggests EMCI expressly and unequivocally waived its right to challenge Shepard's assertion of appraisal rights at a later date." And as the district court determined, "There is no language in the notice or form which suggests EMCI was

waiving any challenges it may have to his assertion of appraisal rights." *See Dirienzo v. Steel Partners Holdings L.P.*, No. 4506–CC, 2009 WL 4652944, at \*5 (Del. Ch. Dec. 8, 2009) (rejecting waiver claim under similar circumstances). When EMCI's September 26 communication is read as a whole with the attached code provisions requiring consent of the record shareholder, no reasonable fact finder could find EMCI voluntarily relinquished that statutory requirement. *See id.* The district court correctly ruled that Shepard's waiver claim failed as a matter of law.

2. *Equitable estoppel.* Shepard has the burden of proving equitable estoppel by a clear and convincing preponderance of the evidence. *Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005). Shepard must prove:

> (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice.

*Id.* (quoting *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 578–79 (Iowa 1990)). Ordinarily, the party claiming equitable estoppel must show "some affirmative act" of concealment. *Skadburg v. Gately*, 911 N.W.2d 786, 798 (Iowa 2018). "However, our caselaw relaxes the requirement to allege and prove affirmative concealment when there is a confidential or fiduciary relationship." *Id.* "When a fiduciary relationship exists, mere silence supplies the affirmative-act requirement." *Id.* Shepard does not claim that EMCI owed him a fiduciary duty to assist his assertion of appraisal rights.[10] Shepard, a substantial and sophisticated investor represented

---

[10]In related litigation, Shepard sued EMCC and its CEO, Bruce G. Kelley, in federal court for breach of fiduciary duty in connection with the merger with EMCI. *See Shepard v. Emps. Mut. Cas. Co.*, 476 F. Supp. 3d 862, 866–67 (S.D. Iowa 2020), *aff'd*, No. 20–2835, 2021 WL 1991227 (8th Cir. May 19, 2021). The district court dismissed that lawsuit for failure to state a claim. *Id.* at 882.

by experienced legal counsel, was dealing with EMCI at arm's length. The district court correctly concluded no fiduciary relationship existed between EMCI and Shepard regarding the appraisal process.

Shepard's estoppel claim fails on the first element. To survive summary judgment without a fiduciary relationship between himself and EMCI, Shepard must allege and show EMCI either made a false representation or took some affirmative act to conceal a material fact. EMCI did neither. To the contrary, in the Proxy Statement and the Merger Agreement, EMCI told Shepard of the requirements to exercise his appraisal rights and the consequences of failing to do so. The Proxy Statement told Shepard that he needed to submit the record holder's written consent to EMCI to exercise his appraisal rights and that he should review the IBCA statute "carefully and in its entirety." The Proxy Statement encouraged shareholders to retain counsel "due to the complexity of the procedures for exercising the right to seek appraisal" and warned that a failure to comply with statutory provisions could result in the loss of the right of appraisal. The Merger Agreement specifically cited to Iowa Code sections 490.1301–.1303 and 490.1320–.1326. The agreement told Shepard the consequences of failing to perfect his appraisal rights, including conversion of the shares into a right to receive Merger Consideration and the cancellation of shares. The other dissenter had no difficulty perfecting appraisal rights.

EMCI did not respond to Cauley's September 23 and 27 letters and did not tell Shepard the Morgan Stanley Letter was insufficient to perfect his appraisal rights before November 5. Nor did EMCI's September 26 letter itself mention Cede's consent was required (although, as noted, the attached code provisions set forth the record shareholder consent requirement). Yet with no fiduciary relationship, EMCI's silence under

these circumstances is insufficient to raise a jury question on equitable estoppel.

EMCI had previously notified Shepard that if he failed to perfect his appraisal rights, EMCI would cancel his shares and convert them to a right to receive Merger Consideration; that is exactly what EMCI did. The district court correctly ruled that Shepard's equitable estoppel claim fails as a matter of law.

**IV. Disposition.**

For the foregoing reasons, we affirm the district court's ruling granting EMCI's motion for summary judgment and denying Shepard's motion for summary judgment.

**AFFIRMED.**